GRIBBLE, et al, *v.* STEARMAN & KAPLAN, INC.

[No. 84, September Term, 1967.]

*Decided March 19, 1968.*

The cause was argued before HAMMOND, C. J., and MAR-BURY, BARNES, McWILLIAMS and FINAN, JJ.

*David Macdonald* for appellants.

*Warren Browning* for appellee.

FINAN, J., delivered the opinion of the Court.

This case involves the conflicting claims of two sets of victims: of what the lower court termed a "slippery operator," who are trying to salvage as much as possible of the loss they sustained at his hands, by establishing a right in a fund which is held by trustees who foreclosed a deed of trust resulting in a surplus of $10,879.97.

Stearman & Kaplan, Inc., the appellee, entered into a contract with H. Glenn Garvin, individually, on November 15, 1961 for the purchase of 10 acres of a 26.8 acre tract near College Park, Prince George's County, Maryland, making a down payment of $7,500 on the purchase price of $165,000. It is this $7,500 down payment which the appellee seeks to recover. The sale was subject to obtaining R-10 zoning. Record title to the property was held by H. Glenn Garvin and Glenda Dale Garvin, his wife, as tenants by the entireties. Although Mrs. Garvin did not join in the contract of sale, the down payment was deposited by her husband in a joint bank account on which her name appeared, and she subsequently signed, together with her husband, as joint owners of the property, the applications for re-zoning. Several amendments were made to the contract extending the time for obtaining the required zoning. Although legal counsel was engaged in December of 1962 to process the zoning applications and petitions were filed in January of 1963, no hearings appear to have been held until September of 1965.

In the meantime the Garvins were busy. On December 21, 1962 they conveyed the 26.8 acre tract to Gregg Properties, Inc.

At the top of this deed appeared the wording, "no consideration." The deed carried no revenue stamps or state stamps, nor did it appear that any county transfer tax was paid on the transaction. The Garvins in their pleadings filed in an equity suit, which will be discussed later, stated that in the transfer to Gregg Properties, Inc., resort was made to a corporate fiction, for the purpose of enabling them to obtain a loan on the subject property at an interest rate which would have been considered usurious if applied to individuals. Mr. and Mrs. Garvin also appear to be president and secretary, respectively, of Gregg Properties, Inc.

On May 20, 1964 Gregg Properties, Inc. executed a deed of trust covering the 26.8 acre tract, in the amount of $116,000 in favor of Sidney Hantman and S. Dorothy Sills, trustees for Bert M. Tracy. This instrument was timely recorded.

In July of 1964 the appellee heard rumors of a sale which the Garvins proposed to make to other parties of the 10 acre tract which was the subject of the sales contract existing between the appellee and the Garvins. To forestall such action the appellee filed an equity suit against H. Glenn Garvin and Gregg Properties, Inc. in the Circuit Court for Prince George's County. The appellee did not join Mrs. Garvin as a party defendant nor did it request a return of its deposit but simply sought to enjoin the transfer of the 10 acres. A timely answer was filed and subsequently when the court issued an order requiring the parties to show cause within 30 days why the case should not be dismissed for lack of prosecution, the appellee requested, and obtained, an order extending the time in which the case could be prosecuted.

The Garvins had other dealings involving the subject tract, having entered into a contract with the appellants, Messrs. Gribble and Novak, under date of April 27, 1964 agreeing to pay them a realtor's brokerage commission in the event they procured a purchaser for the 26.8 acre tract. The record is not clear as to just what transpired thereafter. Apparently the appellants were successful in obtaining a purchaser and thus became entitled to commissions in the amount of $19,000, although the sale was never consummated.

On June 14, 1965, Sidney Hantman and S. Dorothy Sills, trustees under the deed of trust, filed foreclosure proceedings on the 26.8 acre tract in Equity No. C-6381 in the Circuit Court for Prince George's County.

On July 19, 1965, the appellee filed its claim directly in the foreclosure proceedings, pursuant to Md. Rule W75, contending it had an equitable lien on the property foreclosed in the amount of $7,500, representing its down payment on the property and therefore on the proceeds of the sale.

On July 21, 1965, the appellants filed suit against Gregg Properties, Inc., in the Circuit Court for Montgomery County to attach before judgment any surplus resulting from the sale under the foreclosure proceedings in Prince George's County and held by the trustees (garnishees) Hantman and Sills. The trustees, while parties to the foreclosure proceedings in Prince George's County, were also residents of Montgomery County. The trustees, as garnishees, filed an answer in the Montgomery County attachment case confessing assets of Gregg Properties, Inc., but alleged that the assets were subject to an audit by the Circuit Court for Prince George's County in the foreclosure proceeding.

On January 24, 1966, the appellants filed their claim (the same as that on which the attachment proceedings were predicated) in the Prince George's County foreclosure proceeding.

On March 11, 1966, the Circuit Court for Montgomery County granted a judgment of condemnation absolute in the attachment proceedings, "subject to an audit of the proceeds of a foreclosure sale in the case pending in the Circuit Court for Prince George's County, Maryland, entitled: 'In the matter of Sidney Hantman and S. Dorothy Sills, Trustees v. Gregg Properties, Inc., Equity No. C-6381.'"

On April 15, 1966, the auditor's report in Equity No. C-6381 was ratified showing a surplus of $10,879.97 from the foreclosure sale in the hands of the trustees.

On June 27, 1966, Mr. and Mrs. Garvin made a brief sortie into the arena, filing a petition in the foreclosure suit, the object of which was to establish their own claim to the surplus funds and at the same time urge that the claims filed by the appellants and appellee be disallowed. However, the Garvins

withdrew their petition in December of 1966 and its chief significance in the present litigation lies in the admission contained in the pleadings filed by the Garvins' attorney, on their behalf, alleging that the conveyance of the 26.8 acre tract to Gregg Properties, Inc., had in effect been a sham transaction. The pleadings are also significant in that, although they allege that the appellee was guilty of laches and its claim subject to limitations, they made no denial of Mr. Garvin's authority to act as agent for his wife.

After hearing testimony and argument from counsel the lower court found that the claim of the appellee in the amount of $7,500, representing the down payment on the purchase price, was senior to that of the appellants, who were awarded the balance of the surplus remaining in the hands of the trustee after payment of the appellee's claim and $300 covering the bond premium. The appeal was taken from this decree.

The general question to be decided by this Court is whether the lower court was correct in finding that the appellee had a lien against the surplus funds in the hands of the trustees, and that this lien had priority over any claim existing in favor of the appellants. In order to resolve the general question it is necessary to answer the minor premises on which the general question must rise or fall: (1) what was the effect of the judgment of condemnation absolute obtained in the attachment proceedings in Montgomery County; (2) was the appellee's contract of sale with H. Glenn Garvin, (which is the basis for the appellee's vendee's lien) binding on the wife; and (3) can the appellee successfully invoke the doctrine of "marshalling assets" to sustain its lien against the surplus proceeds resulting from the sale of the 26.8 acre tract, when its contract embraced only 10 acres of the tract? We shall answer these questions *seriatim*.

i

The appellee filed its claim for $7,500 directly in the Prince George's County foreclosure proceedings on July 19, 1965, two days prior to the time the appellants instituted their attachment on original process in Montgomery County. The condemnation absolute in the latter case was issued March 11, 1966. Assuming, as the appellants contend, that a judgment of condemna-

tion absolute in an attachment proceeding is a specific lien on the condemned property in the hands of the garnishee, relating back to the time the attachment was laid, *Rowan v. State,* 172 Md. 190, 197, 191 A. 244 (1937), yet, in the instant case it could not relate back beyond July 21, 1965 and this would render it junior to the appellee's claim filed on July 19, 1965. In addition, the judgment of condemnation absolute issued in Montgomery County was, by clear language of the court, made subject to an audit of the proceeds of the foreclosure sale then pending in Prince George's County. It must also be borne in mind that the Circuit Court for Montgomery County did not have jurisdiction over the appellee or over the subject matter of its claim and therefore could not divest the appellee of any rights it may have acquired to the surplus proceeds from the foreclosure sale in Prince George's County. It is to be noted that the Circuit Court for Montgomery County, in wording its judgment of condemnation absolute, carefully avoided any language which might have been construed as an infringement upon the jurisdiction of the Circuit Court for Prince George's County in the then pending foreclosure suit. We think the lower court was correct in concluding that the appellants' claim was junior to the claim of the appellee which was filed prior to it in the foreclosure sale proceedings in Prince George's County.

ii

The lower court found that the contract entered into between the appellee and H. Glenn Garvin on November 15, 1961 was binding on his wife. The court recited the fact that the funds received from the appellee by Garvin were placed in a joint account maintained by Mr. and Mrs. Garvin, and although there was no evidence that the wife made any withdrawals from this account, she had joined with her husband and the appellee in the signing of the application for rezoning of the property under contract. Furthermore, when she and her husband by their counsel filed a petition in the foreclosure proceedings, although they attacked the appellee's claim they did so on the basis of laches and limitations and not on the theory that the contract was not binding on Mrs. Garvin.

We think the case of *Boehm v. Boehm,* 182 Md. 254, 34 A. 2d 447 (1943) controls and that the lower court correctly con-

cluded that the appellee's contract for the 10 acre tract was binding on both Mr. and Mrs. Garvin, husband and wife. See also *Wohlmuther v. Mt. Airy*, 244 Md. 321, 326, 223 A. 2d 562, 565 (1966); *Duck v. Quality Custom Homes*, 242 Md. 609, 220 A. 2d 143 (1966); *Kvedera v. Mondravitzky*, 145 Md. 260, 264, 125 A. 591, 593 (1924).

iii

This Court has recognized that a vendee is entitled, in equity, to a lien on land which is the subject of the sales contract, to the extent of the payments made on the purchase price. The lien arises only in the event the contract, through the fault of the vendor, is not consummated. See *Gerber v. Karr*, 231 Md. 180, 184, 189 A. 2d 353, 355 (1963); *Spruell v. Blythe*, 215 Md. 117, 137 A. 2d 183 (1957); *Caltrider v. Caples*, 160 Md. 392, 153 A. 445 (1931); See also *Colonial Bldg. & Loan v. Boden*, 169 Md. 493, 500, 182 A. 665 (1936), and the annotations in 33 A.L.R. 2d 1384 (1954) and 45 A.L.R. 344 (1926). Although no Maryland case has specifically so held, it is generally accepted that the vendee's lien may not be defeated by a subsequent grantee of the vendor who takes with knowledge of the existing contract. Certainly, in this case, Gregg Properties, Inc. was nothing more than a corporate alter ego of the Garvins, and the knowledge of H. Glenn Garvin was that of the corporation. As a result, the surplus proceeds of the foreclosure sale, which are assets of the corporation, may be applied to the vendee's lien incurred when the property was titled in the name of H. Glenn Garvin and wife, as the corporation is standing in their shoes.

The fundamental question to be answered however, is whether the foreclosure sale under the deed of trust which embraced the entire 26.8 acre tract and incorporated within its description the 10 acre parcel covered by the appellee's vendee's lien, extinguished the vendee's lien as to any surplus resulting from the foreclosure sale, after satisfaction of the deed of trust. We think not.

The 26.8 acre tract brought $141,000 at the foreclosure sale. Mr. Gribble, one of the appellants, a licensed real estate broker, testified that the entire property, including the 10 acre tract sub-

ject to the appellee's contract, had a value of $5,500 per acre at the time of the foreclosure sale. Accordingly, it is obvious that there would have been no surplus if the 10 acre tract had not been included in the sale.

In effect, the Court's view of the facts reveals a debtor with two pieces of property, one tract for 10 acres and one for 16.8 acres, both comprising the 26.8 acre tract. Hantman and Sills, trustees for Tracy under the deed of trust, had a secured lien on all 26.8 acres to the extent of $116,000. The appellee held a vendee's lien in equity on one parcel for $7,500. The entire tract including both parcels was sold by the trustees, and the entire tract had to be sold in order to satisfy the lien created by the deed of trust, which was satisfied leaving a surplus of $10,879.97.

The "two fund" doctrine of marshalling assets, applied by the lower court, requires that where one person has a lien upon two properties, and another holds a lien upon one of the parcels, the first lienor will be compelled, in equity, to seek satisfaction of his claim from the sale of the parcel which is not covered by the second lien. *Burger v. Greif,* 55 Md. 518, 526 (1881). The case at bar does not present a classic example for the application of the doctrine of marshalling of assets, however, the end which this doctrine seeks to accomplish may be, and in equity should be, achieved in the instant case.

The owner of the whole tract certainly recognized its susceptibility of division having entered into a contract of sale for the 10 acres which gave rise to the vendee's lien prior to the execution of the deed of trust. The entire tract (26.8 acres) was sold to satisfy the lien created by the deed of trust and although we cannot say precisely how much of the $141,000 realized from the foreclosure sale was apportionable to the value of the 16.8 acres, we do know that the sale of the entire tract produced a surplus which otherwise would not have resulted except for the inclusion of the 10 acres in the sale. The appellants' own testimony affirmed the fact that the average value per acre was the same for both parcels. On this basis, the 26.8 acres (the entire tract), having sold for $141,000 produced an average yield per acre of $5,261+. This would indicate that the 10 acre parcel had a value of $52,610 and the 16.8 acre parcel a

value of $88,390. If the parcels had been sold separately and the 16.8 acre parcel sold first realized its value of $88,390, a subsequent sale of the remaining 10 acre parcel would have satisfied the deed of trust by bringing only $27,610. However, assigning the average price per acre of $5,261 to the 10 acre parcel, it accounts for $52,610, thus producing a surplus substantially in excess of the balance necessary to satisfy the deed of trust. After costs and commissions the surplus was $10,-879.97.

Therefore, it may be said that by adopting the doctrine of marshalling assets, in theory, the sale of the 10 acre parcel resulted in a surplus fund, which equity should recognize as a source from which the vendee had a right to satisfy its lien. The only lien with priority over the $7,500 vendee's lien was that representing the $300 premium for the trustees' bond.

The lower court was correct in directing the trustees to satisfy the appellee's vendee's lien before honoring any claim of the appellants.

*Order affirmed, with costs.*