499 A.2d 1298

# ARUNDEL FEDERAL SAVINGS & LOAN ASSOCIATION

### v.

## Chester C. LAWRENCE, III, et ux.

## No. 202, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Nov. 12, 1985.

Lance I. Yateman (Carl A. Muly and Mezger, Muly & Yateman, on brief), Glen Burnie, for appellant.

Hans Froelicher, IV (Robert W. Warfield, on brief), Severna Park, for appellees.

Argued before MOYLAN, WILNER and GARRITY, JJ.

WILNER, Judge.

The dispute now before us is over the proceeds from a mortgage foreclosure sale. The disputants are Arundel Federal Savings and Loan Association, appellant, which held the mortgage, and Chester and Elaine Lawrence, appellees, who were contract purchasers of the mortgaged property.

On July 12, 1983, appellees entered into a contract to purchase from E. Black & Sons, Inc. (Black)[1] a certain lot in the Chartwell on the Severn community, the lot "to be improved by the erection and completion of a single family dwelling to be built in substantial conformance with the plans and specifications attached hereto...." The price was $151,150, of which $16,000 was said "to have been paid prior to the signing hereof." The balance was to be paid at time of settlement, which was to be on or before five months from the issuance of the building permit. The parties agree that the $16,000 deposit was indeed paid to Black.

---

**1.** Actual dealings were with Elwood Black, who was apparently the *alter ego* of the corporation. For convenience, we shall occasionally use the masculine pronoun in referring to Black.

Black did not own the lot in question when the contract was signed, but it was understood that he would acquire it, which he proceeded to do. It was also understood by both Black and the Lawrences that Black would need a construction loan in order to build the house. In that light, the contract provided that "[t]he buyers understand and consent to the seller placing a construction mortgage on the property for the term of this contract."

Both Black and the Lawrences applied to appellant for their respective financing—Black for a construction loan, the Lawrences for their "permanent" mortgage loan. A copy of the contract of sale showing both the $16,000 deposit and the Lawrences' consent to Black's obtaining a construction mortgage was given to appellant in connection with each application. Appellant made the loan to Black in September, 1983. Black thereupon purchased the unimproved lot from its then-owner, obtained a building permit, and began construction.

In December, Black fell behind in its construction schedule; the Lawrences, attempting to salvage the deal, agreed to a number of design modifications and extended the five-month period allowed for construction. It all was in vain, however, for in June, 1984, appellant instituted foreclosure proceedings on its mortgage which, together with accrued interest, late charges, and expenses, then stood at $117,963. The property was sold in September for $105,000.

The Lawrences filed, in the foreclosure proceeding pending in the Circuit Court for Anne Arundel County, an application for payment of their "vendee's lien" of $16,000 and $7,456 in expenses advanced toward the construction. Appellant contested both claims, relying primarily on the "consent" in the contract as a defense to the asserted vendee's lien. Following an evidentiary hearing, the court, on November 29, 1985, *sub silentio* rejected the claim for $7,456 but found that the Lawrences had a vendee's lien in the amount of $16,000 and that that lien was superior to the

claims of appellant. Having announced those findings, the court referred the matter to an auditor to "state his account in accordance with the terms of this Order."

The auditor's account has yet to be stated. Appellant responded to the court's November 29 order with a motion under Md. Rules 2–533 and 2–534 for "new trial and/or to alter or amend judgment." That motion was denied on December 13, 1984, whereupon appellant, on January 8, 1985, filed an order for appeal "from the final judgment establishing a vendee's lien in favor of [the Lawrences] entered in this action on November 29, 1984." In this appeal, appellant raises five issues, of which we need address only two. As a preliminary matter, however, we think a word ought to be said about

(1) *Appealability of the November 29 Order*

In the early case of *Snowden v. Dorsey*, 6 H. & J. 114 (1823), the Court of Appeals held squarely that an appeal would not lie from an order, such as this one, that, though purporting to adjudicate a dispute between the parties, effectively did no more than to direct the court auditor to state an account in a certain way. Having in mind the fact that the issue purportedly decided could be relitigated upon the filing of exceptions to the auditor's account, the Court observed, at 116:

"It is easy to perceive, that appeals from orders of this description might be productive of great inconvenience and vexatious delays, which should not be incurred without necessity; and there can be no such necessity where nothing is done conclusive upon the Chancellor; but the order remains open, subject to his final disposition, and may be rescinded on motion."

That rule was abrogated by the General Assembly in 1845. Obviously not sharing the Court's concern over the potential for inconvenience and delay, the Legislature, by 1845 Md.Laws, ch. 367, expressly permitted an appeal to be taken from any equity decree or order "determining a question of right between the parties and directing an

account to be stated, on the principle of each [*sic,* such] determination...." That statutory right has been part of the law for the past 140 years; it presently appears as Md.Code Ann. Courts art., § 12–303(3)(vi).

We mention this long-standing change in the law only because there appears language in a number of Opinions issued after 1845 that, read literally, would seem to follow the *Snowden* rule or suggest its current viability. *See, for example, Johnson v. Hoover,* 75 Md. 486, 490, 23 A. 903 (1892); *Hohensee v. Minear,* 253 Md. 5, 6, 251 A.2d 588 (1969); *Anthony Plumbing of Md. v. Atty. Gen.,* 298 Md. 11, 16–17, 467 A.2d 504 (1983). *Compare,* however, *Conner v. Groh,* 90 Md. 674, 680, 45 A. 1024 (1900), where the statute was recognized and applied, and *Wilhelm v. Caylor,* 32 Md. 151, 161 (1870), where it was recognized but found inapplicable. While some of the post-1845 cases involved the allowance of attorneys' fees rather than issues of priority among competing claimants, and possibly can be distinguished on that or some other basis, we thought it well nevertheless to make clear that, under the statute, such an order is immediately appealable.

### (2) *Who Has Priority?*

Appellant acknowledges that there is such a thing as a vendee's lien. In *Gribble v. Stearman & Kaplan, Inc.,* 249 Md. 289, 239 A.2d 573 (1968), the Court discussed the nature of that lien. At 296, 239 A.2d 573, it said:

"This Court has recognized that a vendee is entitled, in equity, to a lien on land which is the subject of the sales contract, to the extent of the payments made on the purchase price. The lien arises only in the event the contract, through the fault of the vendor, is not consummated.... Although no Maryland case has specifically so held, it is generally accepted that the vendee's lien may not be defeated by a subsequent grantee of the vendor who takes with knowledge of the existing contract." (Citations omitted.)

*See also Stahl v. Roulhac,* 50 Md.App. 382, 438 A.2d 1366 (1982), where, at 385, 438 A.2d 1366, we construed *Gribble* as meaning that the vendee's lien "is enforceable not only against the seller, but also against any person who subsequently acquires an interest in the property with knowledge of the existing contract. . . . "

Under this view, it would seem clear that appellant's lien would be subordinate to that of appellees. It made its loan and took its mortgage with full knowledge of the contract of sale and the deposit paid thereunder.

To defeat that conclusion, appellant urges that (1) because appellees entered into their contract with Black knowing that Black did not then own the lot in question and knowing further that Black intended to place a construction loan mortgage on the lot, they were not "bona fide purchasers" and thus, on general equitable principles, their lien should not prevail over that of appellant, and (2) as a matter of contract law, by virtue of the "consent" clause in the contract, they expressly subordinated their vendee's lien to that of the construction loan mortgage.

Appellant's "equitable" argument rests upon what we regard as a strained, and inappropriate, extension of *Westpark, Inc. v. Seaton Land Co.,* 225 Md. 433, 171 A.2d 736 (1961). *Westpark* involved a situation in which a landowner gave a right of first refusal to one person, good for five years, and then, within the five-year period, contracted to sell the same land, together with other land, to another. Although the right of first refusal was not recorded and the buyer was unaware of it when he entered into the contract, he became aware of the right before he consummated the contract. The dispute, essentially, was between the holder of the right of first refusal (Westpark) and the contract purchaser (Seaton). The Court of Appeals held for *Westpark*, stating, at 450, 171 A.2d 736:

"The general rule is that a purchaser of real estate takes subject to outstanding equitable interests in the property, which are enforceable against the vendor,

where the purchaser is not entitled to protection as a bona fide purchaser ...; and one who purchases the equitable title to real estate is not protected as a bona fide purchaser where he receives notice of a prior equity before he acquires the legal title ... or where he receives notice before he has paid all or substantially all of the purchase price."

Appellant seeks to place appellees in the position of Seaton, stressing their knowledge, at the time of contracting, that Black did not yet own the lot which was the subject of the contract and that he intended to place a construction loan mortgage on the lot. We find neither circumstance to be of significance under the facts of this case.

A vendee's prior knowledge that his vendor has no title to (and thus no power to convey) the subject matter of the contract could, we imagine, be important where the failure to consummate the contract is due to that lack of title. In that circumstance, the vendee's lien might have to give way to the rights of other, more innocent claimants. But that is not the case here. It was contemplated that Black would acquire the lot and he in fact did so. The default on the contract arose from his inability to complete the construction, not his inability to acquire or convey the lot.

Appellant's attempt to equate appellee's knowledge of a "contemplated construction loan" to knowledge of an "outstanding equitable interest" is equally without merit. Appellant had no "equitable interest" in the property when appellees and Black entered into their contract on July 12, 1983. Although it was certainly anticipated at that time that a construction loan would be needed and obtained, there was no evidence to indicate, or even suggest, that appellant would make the loan. Indeed, Black did not even apply to appellant for the loan until after the contract was signed. It was not until August 8—nearly a month after the contract was signed—that appellant issued a commitment for the loan; the actual loan was not made until

September 21.  No case of which we are aware has gone so far as to equate a supposition that a lender might make a loan if an application were filed, with an "outstanding equitable interest," and we shall not be the first to establish any such principle.

We turn then to appellant's alternative theory, that, by expressly consenting in advance to the placement of a construction loan mortgage on the property, appellees have effectively subordinated their vendee's lien to that mortgage.  In this there is more substance.

■■■  As a general rule—*i.e.*, absent some specific law to the contrary—priorities established by law may be altered by agreement; thus, a vendee can, if he chooses, subordinate his lien to that of a construction lender which otherwise would be inferior to his own.  Such an agreement will not lightly be implied, however.  As noted in *Jones v. John S. Stubbs & Assoc.*, 243 Md. 480, 483, 221 A.2d 361 (1966), the answer to whether particular language in an agreement will suffice to effect a subordination "must ordinarily depend on the intent of the parties ascertained from the wording of the agreement interpreted in the light of all the attending circumstances."  In effect, this is merely an application of the "objective" law of contracts to what is essentially a matter of contractual interpretation.

■■  The language in question—"[t]he buyers understand and consent to the seller placing a construction mortgage on the property for the term of this contract"—is certainly not of a type normally used to express an intent to subordinate one lien to another.  Indeed, it is not couched at all in terms of a vendee's lien and never uses the word "subordinate."  Yet, it must have some purpose.  In construing a contract, each clause must be given effect if reasonably possible.  *Sagner v. Glenangus Farms, Inc.*, 234 Md. 156, 167, 198 A.2d 277 (1964).  As we said in *Insel v. Solomon*, 63 Md.App. 384, 395–96, 492 A.2d 963 (1985),

"Courts are not free simply to ignore provisions in a contract because they may be poorly drafted.  Rather,

'under the objective law of contracts, a court, in construing an agreement, must first determine from the language of the agreement itself, what a reasonable person in the position of the parties would have meant at the time it was effectuated.' ... If the language is clear, it controls; if it is ambiguous, the court may consider extrinsic factors in ascertaining what the parties intended." (Citation omitted.)

██ The contract was drafted by the builder, Black. Mr. Black testified that he inserted the "consent" clause at the insistence of appellant, adding that he understood that "a lender would not make a loan unless a contract purchaser consented to that mortgage loan." A loan officer from appellant confirmed that understanding, stating that, if such language is not in the contract of sale, he would have the buyer sign a separate "consent to mortgage" form.

Neither appellant nor Black needed appellees' consent in order to make the loan or encumber the property; at the time of the loan, the property would (and did) belong solely to Black, who was fully empowered to encumber it. Why, then, would appellant insist on the language, but to ensure that its lien would be a paramount one? What other purpose could it reasonably have? More important, what would a reasonable person in the position of the parties think it meant at the time the contract was signed? Under the circumstances, we can see only one answer: it was intended to subordinate appellees' equitable rights under the contract, which would include their vendee's lien, to that of the construction loan mortgage.

Accordingly, we believe that the Circuit Court erred in its conclusion that appellees' lien was superior to the claims of appellant, and shall therefore reverse that part of its November 29, 1984 order.

ORDER REVERSED IN PART; CASE REMANDED TO CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS; APPELLEES TO PAY THE COSTS.