**AMERICAN HOLIDAYS, INC.,**
**a Missouri Corporation,**
**Appellant (Defendant),**

v.

**FOXTAIL OWNERS ASSOCIATION, a**
**Wyoming Nonprofit Corporation,**
**Appellee (Plaintiff).**

**No. 91–41.**

Supreme Court of Wyoming.

Dec. 9, 1991.

Frank Hess, Jackson, for appellant.

Phelps H. Swift, Jr. of Mullikin, Larson & Swift, Jackson, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Appellant, mortgagee of a shared interest in a time-share condominium, challenges the trial court's decree of foreclosure which subordinated its mortgage to appellee's lien for unpaid condominium assessments. We affirm the decision of the trial court.

Appellant states the issue to be resolved as follows:

"Did the court err in holding as a matter of law that the homeowner's assessment lien had priority over a previously filed mortgage?"

Condoshare Jackson Limited Partnership recorded a Declaration of Condominium for the Foxtail Condominium Project on January 6, 1981. This Declaration created appellee, the Foxtail Owners Association (Association). The Association was given numerous responsibilities for maintenance and upkeep of the Foxtail condominium units and common areas. It was empowered to levy assessments against the shared interest of each of the Foxtail condominium owners in order to pay its expenses. These assessments were to be secured by a lien on each shared interest and would bear interest and court costs if not paid.

On September 16, 1984, Edward L. Meier and Clara Zo Meier (Meiers) executed a note and mortgage deed secured by a shared interest in one of the Foxtail units in favor of The Time Store, Inc., a Colorado corporation (Time Store). This mortgage deed was recorded on March 8, 1985. The mortgage deed contained a legal description which made the shared interest "sub-ject to the terms, covenants, conditions, and restrictions contained in the Declaration." The Time Store's mortgagee interest passed by assignment and is now held by appellant American Holidays, Inc. (American Holidays).

The Meiers defaulted on the mortgage with American Holidays on December 1, 1985. They also failed to pay Association dues as required by the Declaration. On October 10, 1989, the Association filed two Notices of Lien for unpaid dues with the Teton County Clerk. Then, on January 30, 1990, the Association filed this complaint for foreclosure, which named the Meiers and American Holidays as defendants.

The trial court entered a Summary Judgment and Decree of Foreclosure on January 3, 1991. Both the Association and American Holidays were given judgment against the Meiers. The court further found that American Holidays' interest was subordinate to the Association's lien for unpaid assessments, interest, costs and attorney fees, "even if the mortgage [had been] filed [for record] prior to the time the lien mature[d]." The decree of foreclosure provided that upon foreclosure sale the proceeds would be applied: First, to the costs of the sale; second, toward satisfaction of the Association's assessment lien; and third, toward satisfaction of the mortgage held by American Holidays. Any surplus would be paid to the Meiers. American Holidays filed a timely notice of appeal from this decision.

All issues in this case were resolved by summary judgment.

"We review a summary judgment in the same light as the district court, using the same materials and following the same standards. Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law." *Zmijewski v. Wright*, 809 P.2d 280, 282 (Wyo.1991).

There is no real dispute about the facts here, only about the legal conclusions the trial court reached.

■ Wyoming Statute 34–1–121(a) (July 1990 Repl.) provides in part that

"[e]ach and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded, according to the provisions of this chapter, shall be notice to and take precedence of any subsequent purchaser or purchasers from the time of delivery of any instrument at the office of the register of deeds (county clerk), for record."

Appellant's mortgage was recorded prior to the recordation of appellee's lien statement, but subsequent to the recordation of the Declaration of Condominium for the Foxtail Condominium Project. The question to be resolved is that of appellant's priority status relative to that of appellee, considering the recording dates and the subordination clauses contained in the Declaration and in the Meiers' mortgage.

It is undisputed that American Holidays' interest is subject to the provisions of the Declaration, which by its terms are made covenants running with the land binding on "any person acquiring, leasing, or owning an interest in the real property and improvements comprising the Project, and to their respective administrators, personal representatives, heirs, successors, and assigns." The mortgage, whose mortgagee interest was assigned to American Holidays, also describes the property as being subject to the terms of the Declaration.

Our review of authority connected with this issue shows no previous Wyoming cases on point. Cases from other jurisdictions show that the issue of priority has been resolved, generally, in either one of two ways. First, many jurisdictions have applied a statutory scheme governing condominium assessment priority. *See e.g., Towne Realty, Inc. v. Edwards,* 156 Wis.2d 344, 456 N.W.2d 651 (1990); *First Federal Savings Bank v. Eaglewood Court Condominium Ass'n, Inc.,* 186 Ga.App. 605, 367 S.E.2d 876 (1988); *Brask v. Bank of St. Louis,* 533 S.W.2d 223 (Mo.Ct.App.1975). Wyoming has no such statute, and so we do not find these cases to be helpful.

Second, some jurisdictions have held, in the context of homestead exemption priority, that an association's lien for assessments is a contractual lien which relates back to the time of filing the declaration. *See Bessemer v. Gersten,* 381 So.2d 1344 (Fla.1980); *Accord, Inwood North Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 636 n. 1 (Tx.1987); *In re Lincoln,* 30 B.R. 905 (Bankr.D.Colo.1983). For reasons stated below, we think that the *Bessemer* rule properly applies to this case, and that the lien for assessments which attached when the mortgagee's interest was created relates back to the time of filing of the Declaration.

The *Bessemer* case gives no rationale for its holding that an association's lien relates back to the time of recording. We follow it in this case because we believe it reflects the intent of the original covenantor as revealed in the terms of the Declaration.

We consider first the language of the Declaration itself to determine its effect on the interests of the parties. In interpreting the covenants contained in a condominium declaration, we will follow our general rule that we seek to discern the intent of the parties, and especially that of the grantor. *Cf. Dawson v. Meike,* 508 P.2d 15, 18 (Wyo.1973) (court seeks to discern intent in interpreting covenants contained in warranty deed). *See also* 20 Am. Jur.2d *Covenants, Conditions, and Restrictions* § 5 (1965):

"The courts have consistently adhered to the view that in their interpretation or construction of covenants, the cardinal principle, or most persuasive guide for them to follow, is the intention of the parties as it may appear or be implied from the instrument itself. * * *

"The intention of the parties is to be gathered from the entire context of the agreement, and not from a single clause." (footnote omitted)

Where the plain terms of a covenant are sufficiently clear, we construe it without reference to attendant facts and circumstances or extrinsic evidence. *Revelle v. Schultz,* 759 P.2d 1255, 1258 (Wyo.1988).

The Declaration contained a provision, quoted in part above, subjecting the property to its terms and creating a covenant running with the land:

"2.01 *Submission to Condominium Ownership.* * * * All of said property and all Common Facilities and Unit Furnishings are and shall be subject to the covenants, conditions, restrictions, uses, limitations, and obligations set forth herein, each and all of which are declared and agreed to be for the benefit of said Project and each Condominium therein and in furtherance of a plan for improvement of said property and division thereof into Condominiums. Each and all of the provisions hereof shall be deemed to run with the land and shall be a burden and a benefit to the Declarant, and to any person acquiring, leasing, or owning an interest in the real property and improvements comprising the Project, and to their respective administrators, personal representatives, heirs, successors, and assigns."

Any subsequent mortgage or encumbrance was made subject to the terms of the Declaration:

"4.05 *Separate Mortgages.* * * * Any mortgage or other encumbrance of any Shared Interest shall be subject [to] and subordinate to each and all of the provisions of this Declaration and, in the event of foreclosure, the provisions of this Declaration shall be binding upon any Shared Owner whose title is derived through foreclosure by private power of sale, judicial foreclosure, or otherwise."

The Declaration provided for assessments to be made by and paid to the Association:

"9.01 *Agreement to Pay Assessments.* * * * [E]ach Shared Owner by the acceptance of instruments of conveyance and transfer of his Shared Interest, whether or not it be so expressed in said instruments, shall be deemed to covenant and agree with each other and with the Association to pay to the Association all assessments made by the Association for the purposes provided in this Declaration."

These assessments would bear interest at the rate of one percent per month. Finally, the Declaration provided that such assessments would constitute a lien on the property:

"9.04 *Lien for Assessments.* All sums assessed to the Shared Owner of any Shared Interest in a Condominium within the Project pursuant to the provisions of this Article IX, together with interest thereon as provided herein, shall be secured by a lien on such Shared Interest in favor of the Association. To evidence a lien for sums assessed pursuant to this Article IX, the Association may prepare a written notice of lien setting forth the amount of the assessment, the date due, the amount remaining unpaid, the name of the Shared Owner of the Shared Interest, and a description of the Shared Interest. Such a notice shall be signed and acknowledged by a duly authorized officer of the Association and may be recorded in the office of the County Clerk of Teton County, State of Wyoming. No notice of lien shall be recorded until there is a delinquency in payment of the assessment. Such lien may be enforced by judicial foreclosure by the Association *in the same manner in which mortgages* or trust deeds on real property may be foreclosed in the State of Wyoming. In any such foreclosure, the Shared Owner shall be required to pay the costs and expenses of such proceeding (including reasonable attorneys' fees) and such costs and expenses shall be secured by the lien being foreclosed."

The trial court found that this language was plain and unambiguous and that it subjected any interest of a mortgagee to the Association's lien for assessments, interest, costs and attorney fees, even if the mortgage was recorded prior to the time that the lien matured. We agree that the Association's lien has priority because the Declaration subordinated all subsequent encumbrances to its provisions.

■ Section 4.05 of the Declaration has the effect of a subordination agreement, to which appellant became a party when it took assignment of the mortgage interest. A subordination agreement controls even over real property priorities established by law. *Arundel Federal Savings & Loan*

*Ass'n v. Lawrence*, 65 Md.App. 158, 499 A.2d 1298, 1302 (1985). Thus, sellers of unimproved land routinely subordinate their prior purchase money mortgage to a mortgage lien for construction purposes in order that land may be improved. *Cf.* 2 G. Glenn, *Glenn on Mortgages* § 352 (1943); G. Osborne, *Handbook on the Law of Mortgages* § 212 at 387 (2nd ed. 1970). And prior condominium subscription agreements creating a vendee's lien are frequently made subject to a lien for a building loan mortgage. G. Nelson & D. Whitman, *Real Estate Finance Law* § 13.3 at 947–49 (2nd ed. 1985).

The scope of the subordination is described in Section 4.05 of the Declaration. This section provides that any mortgage or other encumbrance is subject to and subordinate to *"each and all"* of the provisions of the Declaration. No exception is made for the Association assessment provisions of Article 9. Since these assessment provisions are to be enforced by the existence of a lien, the lien provision itself should also take priority.

Appellant notes that Section 9.04 provides for recordation of a written notice of lien once default occurs. It argues that the lien has the priority date of this recordation. However, this provision for recording written notice of lien is designed only to provide recorded notice once the payments are in default. It differs from the underlying lien created by the terms of the Declaration itself, which comes into being as soon as the owner of the shared interest takes his interest subject to the Declaration. *See Bessemer*, 381 So.2d at 1348.

Furthermore, the only way to give effect to the subordination clause, which should control over the result achieved under a pure application of the recording statute, is to hold that the Association's lien relates back to the time the Declaration was recorded. That way, *any* subsequent encumbrance of the shared interest would have a later priority than the Association's lien for assessments, as implicitly provided for in the Declaration. Therefore, we hold that the priority date of the Association's lien relates back to the time that the Declaration was recorded and, as a covenant running with the land, binds the holders and assignees of a subsequent mortgagee interest.

Appellant cites a case which achieved a contrary result based on facts similar to those of this case. *St. Paul Federal Bank for Savings v. Wesby*, 149 Ill.App.3d 1059, 103 Ill.Dec. 390, 501 N.E.2d 707 (1986), *cert. denied* 114 Ill.2d 557, 108 Ill.Dec. 425, 508 N.E.2d 736 (1987). We distinguish *Wesby* in that the declaration in that case expressly provided that the assessment did not become a lien until the unit owner failed to make payment. Also, the declaration specifically provided that the lien for unpaid assessments was subordinate to the lien of a prior recorded first mortgage. Thus, we are not persuaded by the *Wesby* case.

Our decision affirming the trial court is correct as a matter of law. We note also that it is fair and reasonable and benefits both parties. The assessments are used by the Association for insurance, repairs, maintenance, and upkeep of the condominium unit. The benefit to the mortgage holder is that the condominium unit is maintained in good repair and condition and its value maintained. The Association benefits in that all units are kept in good repair and condition and total property values are enhanced.

Because American Holidays' mortgage interest was subordinate to the Declaration, including the provision for the Association's lien, the lien took priority over the mortgage when the Association foreclosed. Therefore, the trial court properly ordered that the proceeds of the foreclosure sale be apportioned to pay off the lien and expenses connected thereto prior to payment of the mortgage.

The order of the trial court is affirmed.