162

## 21578

The CITIZENS AND SOUTHERN NATIONAL BANK OF SOUTH CAROLINA, Appellant, v. Stephen D. SMITH; Thaddeus E. Williams; Smith-Williams & Associates, Inc.; St. John's Episcopal Church; University of South Carolina Educational Foundation for the benefit of Maximillian LaBorde Scholarship Fund; University of South Carolina Gamecock Club, Athletic Fund; First Palmetto Bank & Trust Company, Inc.; Hellams-Ullman, Inc.: South Carolina Employment Security Commission; United States Leasing Corporation; Robert F. Lindsey; and Pierre F. LaBorde, Jr., Defendants, of whom First Palmetto Bank and Trust Company and Pierre F. LaBorde, Jr., Stephen D. Smith; Thaddeus E. Williams, Smith-Williams & Associates, Inc.; St. John's Episcopal Church, University of South Carolina Educational Foundation for the Benefit of Maximillian LaBorde Scholarship Fund and the University of South Carolina Gamecock Club Athletic Fund are Respondents.

(284 S. E. (2d) 770)

*John S. Taylor, Jr.,* of *Robinson, McFadden, Moore & Pope,* Columbia, *for appellant.*

*John Gregg McMaster, Timothy G. Quinn, Frank E. Robinson, II, Joe E. Berry, Jr., Walter B. Todd, Jr., Harry M. Lightsey, Jr., James B. Richardson, Glenn Bowers,* and *Robert G. Horine,* Columbia, and *Philip Wittenberg,* Sumter, *for respondents.*

October 5, 1981.

*Per Curiam:*

This appeal involves the priorities of several mortgages.

This foreclosure, involving a most complex factual situation, began in 1973 when the respondent Dr. Pierre F. LaBorde owned three parcels of undeveloped land in Richland County (132.9, 489 and 490 acres). He sold this land to Stephen D. Smith and Thaddeus Williams only receiving purchase money mortgages in return. He agreed to subordinate these purchase money mortgages in order for the developers to obtain money to develop the land. This provision read in part:

"(A)nd the seller agrees to execute such documents as may from time to time, be required to perfect such subordination."

The precise meaning of this provision is in dispute. Subsequently, LaBorde was informed that the developers had placed additional mortgages on the land without advising him or obtaining his consent.

Upon contacting the developers a new agreement was entered into in March, 1974 in which they agreed:

(1) The purchase money mortgages would be satisfied.

(2) New mortgages were to be executed in place of the purchase money mortgages.

(3) LaBorde would in writing subordinate these new mortgages to any other mortgages provided the developers would satisfy the outstanding mortgages (to C & S Bank, and to Ira Miller) within three months and to pay to LaBorde $4,000.00.

Pursuant to this agreement LaBorde executed a complete release to Smith & Williams, and fully complied with the terms of the new (March 1974) agreement. Smith & Williams agreed

to pay off the mortgages. Instead they extended the mortgages without the knowledge of LaBorde.

LaBorde has not been paid anything by Smith & Williams on any mortgage, new or old.

While there are numerous foreclosures relating to this financial debacle, here we are only concerned with the foreclosure by LaBorde, and others, on the 490 acre tract which was subdivided into four tracts of 130, 160, 160 and 40 acres.

C & S is involved because it loaned the developers Two Hundred and Fifty Thousand ($250,000.00) Dollars, took. a mortgage on the 490 acres and extended this mortgage. The three charities, St. John's Episcopal Church, University of S. C. Educational Foundation and University of S. C. Gamecock Club are involved because as soon as LaBorde *gave* undivided portions of the 490 acre tract to each of them, they, in turn, deeded it over to the developers, taking purchase money mortgages from the developers.

The appellant Citizens and Southern National Bank of South Carolina asserts the original subordination agreement was self-executing. The respondents contend they had to consent in writing for the subordination to be effective. In view of our resolution of this case it is not necessary to pass on this issue.

At common law and in equity a purchase money mortgage will ordinarily be given priority over other security instruments in realty. *Crystal Ice Co. of Cola. v. First Colonial Corp.*, 273 S. C. 306, 310, 257 S. E. (2d) 496 (1979), but it may be subordinated by agreement of the parties. *Rivers v. Rice*, 233 Ga. 819, 219 S. E. (2d) 678 (1975); 55 Am. Jur. (2d), *Mortgages*, § 314, 344. Because it alters the normal priority of the mortgagees, priority under a subordination agreement is strictly limited by the express terms of the agreement. *Gluskin v. Atlantic Savings & Loan Association*, 32 Cal. App. (3d) 307, 322, 108 Cal. Reptr. 318, 323 (1973).

Here, LaBorde consented to the subordination of his mortgage to C & S and acknowledged in writing that his mortgage would be subordinate to the bank's until the latter had been satisfied, at which time LaBorde's mortgage would become a "first mortgage." This agreement was drafted by LaBorde's attorney and signed by LaBorde with full knowledge of the facts and circumstances. This written acknowledgment of

subordination makes it immaterial whether the original subordination clause was "self-executing" or required LaBorde's written consent. We hold the circuit court erred in finding that LaBorde did not acknowledge the superiority of the C & S mortgage in the March 7, 1974 agreement.

Subsequently, C & S extended the time for payment of the $250,000.00 mortgage for one year without LaBorde's knowledge and consent and we hold C & S lost its priority vis-a-vis LaBorde by doing this. As a matter of law,

"[A] lender and a borrower may not bilaterally make a material modification in the loan to which the seller has subordinated without the knowledge and consent of the seller to that modification, if the modification materially affects the seller's rights." *Gluskin v. Atlantic Savings & Loan Association, supra.*

If the terms of the debt are materially altered without the subordinated mortgagee's consent, the priority of the mortgages will be reversed in favor of the subordinated purchase money mortgage. See *Remodeling & Construction Corp. v. Melker,* 65 *N. Y. S.* (2d) 738; 59 C. J. S. *Mortgages,* § 276; Osborne on Mortgages, (2d) Ed., § 212, p. 386. The trial court held that the bank's extension of time past June 7, 1974 prejudiced LaBorde. This finding is supported by evidence that LaBorde considered repayment of the debt of June 7, 1974 a material inducement for subordinating his mortgage to the banks. We hold on the particular facts of this case, the bank lost its priority by modifying the terms of the loan to Smith-Williams in a manner that prejudicially affected LaBorde's rights without his knowledge or consent.

The trial judge concluded, and we agree, the mortgagees should be allowed to foreclose their liens on the respective tracts as follows:

(1) as to the 130 acre LaBorde tract, LaBorde's lien shall be first in priority and C & S's lien second in priority;

(2) as to the 160 acre tract on which St. John's Church has a mortgage, the C & S lien shall be first, St. John's lien shall be second, First Palmetto's lien shall be third;

(3) as to the 160 acre tract which the USC Educational Foundation has a mortgage, C & S lien shall be first, USC Educational Foundation lien shall be second, First Palmetto shall be third;

(4) as to the 40 acre tract on which the Gamecock Club has a mortgage, C & S lien shall be first, Gamecock Club second, First Palmetto third;

(5) the amount of LaBorde's lien is $117,000.00 plus $41,-000.00 interest making a total of $158,000.00; the amount of USC Educational Foundation lien is $220,620.57 plus interest and a reasonable attorney's fee; USC Gamecock Club's lien is $51,574.44; St. John's Episcopal Church lien is $204,264.72; First Palmetto Bank's lien has not been proven, this mortgagee can make its claim to the surplus proceeds as allowed by the master pursuant to Circuit Court Rule 53.

(6) the original amount of the C & S lien was $250,000.00. LaBorde acknowledged a debt of $200,000.00 to C & S Bank in the March 7, 1974 agreement. It is also undisputed that two payments of $50,000.00 have been made. The only issue left to be resolved is when the payments were made.

If both payments were made prior to the March 7, 1974 agreement, C & S would have a lien for $200,000 apportioned among the four tracts of the 490 acres as follows:

160 acres ................................$65,306.00
160 acres ................................$65,306.00
130 acres ................................$53,061.50
40 acres ................................$16,326.50

If one payment was made prior to the March 7, 1974 agreement, and one payment after C & S would have a lien for $150,000 apportioned as follows:

160 acres ................................$48,979.50
160 acres ................................$48,979.50
130 acres ................................$39,795.80
40 acres ................................$12,244.80

If both payments were made after the March 7, 1974 agreement, C & S would have a lien for $100,000 apportioned as follows:

160 acres ................................$32,652.90
160 acres ................................$32,652.90

130 acres .............................. $26,530.40
40 acres .............................. $ 8,163.24

To each lien should be added the cost and expenses of collection except USC Educational Foundation which costs and expenses have been included, in the stipulated amount. To each lien a reasonable attorney's fee should attach.

This resolution, of course, does not affect any of the mortgagee's rights, if any, against Smith-Williams, individually or incorporated.

Appellant's remaining exceptions are without merit and are dismissed pursuant to Rule 23 of the Rules of Practice of this Court.

Affirmed in part and reversed in part.