606 So.2d 691 (1992)
UNITED STATES of America, acting on Behalf of the SMALL BUSINESS ADMINISTRATION, Appellant,
v.
SOUTH ATLANTIC PRODUCTION CREDIT ASSOCIATION, successor to Mid-Florida Production Credit Association, Appellee.
No. 91-109.
District Court of Appeal of Florida, First District.
September 30, 1992.
*692 Kenneth W. Sukhia, U.S. Atty., Roy F. Blondeau, Jr., Asst. U.S. Atty., Tallahassee, for appellant.
W. Henry Barber, Jr. of Dell, Graham, Willcox, Barber & Henderson, P.A., Gainesville, for appellee.
PER CURIAM.
This appeal is from a final judgment of foreclosure finding (1) appellee South Atlantic Production Credit Association's (PCA's) mortgage dated April 17, 1978, is superior to any mortgage of the appellant Small Business Administration (SBA), and (2) the notes to PCA, together with the interest, attorneys' fees and court costs relative thereto, are secured by PCA's mortgage and are therefore superior to any claims of SBA. We affirm in part and reverse in part.
On December 30, 1977, Michael and Carol Spencer, who were farmers, borrowed $84,000 from the appellant SBA. Their promissory note was secured by a mortgage to SBA on their farm land.
On April 17, 1978, the Spencers obtained a loan from PCA and executed a promissory note in the amount of $85,000 secured by a mortgage on said farm land. The Spencers also signed a PCA form entitled "Request for Subordination," which was submitted to SBA on May 30, 1978. The stated purpose of the request was to "Purchase irrigation equipment $79,393.50; Purchase PCA stock and closing costs $9,060.50." The repayment terms were "6 annual installments at $16,325.00 beginning 4-5-79 and a final due April 5, 1985." Although the PCA mortgage provided for *693 future advances, the request made no mention of future advances.
SBA's Disaster Branch in Jacksonville, in analyzing the request, noted in an interoffice memo that since the Spencers were going to use the money from the PCA loan to purchase irrigation equipment, "[s]ubordination to allow Capital Improvement will not dilute SBA position as equity will be improved by amount of loan increase." On that basis the branch manager approved the request for subordination without looking at the PCA mortgage. PCA did not send a copy of the mortgage, SBA did not ask for a copy of the mortgage, and the mortgage was not yet recorded.
SBA prepared a subordination agreement describing the Spencers' encumbered farm land and stating that SBA
does hereby consent and agree that its mortgage lien encumbering the real property above described shall be and is subordinate and subject to that mortgage lien executed in favor of Mid-Florida Production Credit Association, in an amount not to exceed $85,000.00 as recorded in Official Records Book ____, Page ____, public records of Alachua County, Florida.
(emphasis added). SBA signed the agreement on June 19, 1978, and sent it to PCA. PCA recorded their mortgage  secured by the same farm land encumbered by the SBA mortgage  on June 27, 1978. The Official Record book number (1145) and page number (418) of PCA's recordation were filled into the blanks on the subordination agreement, which was recorded the day after the PCA mortgage was recorded.
Over the next few years, PCA made future advances to the Spencers totalling approximately $273,000, although the balance owed presumably never exceeded $85,000 in principal. The future advances were typically one year loans for agricultural operating expenses.
On January 17, 1985, the Spencers executed a one-year note to PCA in the amount of $56,300, which PCA claims was a future advance under the April 17, 1978, mortgage. On April 23, 1985, the Spencers signed a renewal note to PCA in the amount of $28,618.08, which represented the unpaid balance of the April 17, 1978, mortgage.
On September 9, 1987, PCA filed a complaint against the Spencers, the United States of America, and two other parties not related to this appeal. The complaint sought to foreclose the Spencers' mortgages and security agreements. The only notes held by PCA that were not paid at the time of trial were the two for $56,300 and $28,618.08. Judge Doughtie granted summary final judgment of foreclosure as to all parties except the United States of America in that
7. The Court retains jurisdiction as to the following issues of priority between Plaintiff and Defendant THE UNITED STATES OF AMERICA:
(a) Whether the Promissory Note dated January 17, 1985, in the principal sum of $56,300.00 from [the Spencers] to [PCA] is secured by that certain Mortgage from [the Spencers] to [PCA] recorded in Official Records Book 1145, Page 418, of the public records of Alachua County, Florida;
(b) Whether the UNITED STATES OF AMERICA, acting through the Small Business Administration, subordinated its Mortgage described therein to Plaintiff's $85,000.00 Mortgage being foreclosed, including the usual obligation of accrued interest, costs and attorneys' fees.
The case was transferred to Judge Tench, who heard argument and testimony on these priority issues.
SBA argued they had no intention to subordinate themselves to anything above $85,000 or to the $56,300 mortgage. SBA therefore claimed that they were only subordinate to $28,618 (the balance under the original PCA loan), or at most subordinate up to $85,000 in toto.
PCA argued that the intentions of the parties are not at issue because the subordination agreement unambiguously subordinated SBA to the PCA mortgage, which provided for future advances, and that since the $56,300 loan was a future advance, SBA is subordinated to the $56,300 *694 note. PCA also argued that SBA was subordinated to interest, costs and attorneys' fees totalling approximately $57,000.
An attorney testified as an expert witness in real estate financing. He said that a subordination to $85,000 in principal would also create a subordination to other sums that might become due, such as insurance premiums, taxes, or attorneys' fees in the event of a foreclosure; a lender would not be willing to take priority on the principal without taking priority on the related interest and costs. The attorney testified that although the subordination agreement does not mention interest, costs or attorneys' fees, it is subordinating to all the terms and conditions of the PCA mortgage.
James Avery testified he was the PCA loan officer who handled the Spencers' account. When Avery was asked whether he intended for SBA to subordinate to interest, costs and attorneys' fees, SBA objected based on the parol evidence rule. SBA argued the subordination agreement unambiguously states SBA is subordinated to $85,000 in toto, and therefore extrinsic evidence is inadmissible. Judge Tench said "the subordination agreement talks about $85,000 and we're talking about a mortgage that lets you have an advance which would let you go above $85,000. So ... I think we're in a position where we have to take [parol] evidence." Avery testified PCA's intent was to subordinate SBA to $85,000 in principal plus interest, costs and attorneys' fees, even though the agreement does not say `$85,000 in principal.' Avery admitted PCA did not send a copy of their mortgage to SBA and it was not recorded until after the agreement was executed. He said PCA did not notify SBA when they made future advances because the principal never exceeded $85,000.
Thomas Schimmerling testified he was the SBA attorney who drafted the subordination agreement. He said he envisioned that $85,000 would be SBA's maximum exposure. Although he did not recall the specific transaction, Schimmerling could tell from the documents that the PCA mortgage appeared to be for the purchase of irrigation equipment and not to act as an operating loan. Judge Tench asked Schimmerling whether it would have been prudent to look at PCA's mortgage. Schimmerling answered he thought PCA would be bound by their own request for subordination.
William Devore testified he has worked for PCA since 1967. He said it is fairly common knowledge that PCA mortgages use a future advances clause.
Felton Bridges testified he is a special assets manager for PCA. He said PCA never asked for SBA to consent to future advances because consent was not needed, and he assumed SBA knew PCA had a future advances mortgage. He responded affirmatively when asked whether the $56,300 note was secured by PCA's 1978 mortgage to which SBA was subordinate.
Tommy Rhodes testified he is the chief of portfolio management for SBA. He had no personal knowledge of the transactions with the Spencers, but he said it was not necessary to look at PCA's mortgage because they had put the amount they were subordinating to in the agreement. Rhodes said it is SBA policy to not subordinate to future advances. SBA agrees to only two kinds of subordinations: (1) operating loans for a term of one year or less, and (2) loans which improve the value of the property, such as the installation of an irrigation system.
Mr. Spencer testified he intended for the $56,300 note to be secured by the 1978 mortgage for $85,000.
Ranfred Rewis testified by deposition he was the PCA loan officer who handled the $56,300 loan. He said the purpose of the loan was for the farm's operating expenses. He also said the loan was intended as a future advance as evidenced by the credit summary or history and the comments thereon, which show it was intended that the note for $56,300 be secured by the 1978 mortgage subordinated to by SBA.
A final judgment of foreclosure was entered on December 7, 1990. Judge Tench found (1) PCA's mortgage is superior to any mortgage of SBA, and (2) the notes to PCA, together with the interest, attorneys' *695 fees and court costs relative thereto, are secured by PCA's mortgage and are therefore superior to any claims of SBA. Judge Tench found PCA was owed $137,247.02, which represents a principal balance of $84,916.08 plus interest, costs and attorneys' fees. This timely appeal followed.
Where the language used in a contract is ambiguous or unclear, the court may consider parol evidence not to vary the terms of the contract, but to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making, and the relation of the parties. Vienneau v. Metropolitan Life Ins. Co., 548 So.2d 856, 859 (Fla. 4th DCA 1989). Extrinsic evidence is admissible only where the ambiguity is latent, and extrinsic evidence is admissible as to the intent thereof. Hunt v. First National Bank, 381 So.2d 1194 (Fla. 2d DCA 1980). A latent ambiguity arises when the writing on its face appears clear and unambiguous, but there is some collateral or extrinsic matter which renders its application uncertain. 23 Fla. Jur.2d Evidence and Witnesses § 347 (1980). In the absence of an ambiguity, the actual language used in the contract is the best evidence of the intent of the parties and the plain meaning of the language controls. Acceleration National Service Corp. v. Brickell Financial Services Motor Club, Inc., 541 So.2d 738 (Fla. 3d DCA 1989).
The threshold question, therefore, is whether the following language in the subordination agreement is ambiguous: "[SBA's mortgage lien] is subordinate and subject to [PCA's mortgage lien] in an amount not to exceed $85,000." The trial court found the language ambiguous because PCA thought interest, costs and attorneys' fees over and above the $85,000 were receiving priority, and SBA thought interest, costs and attorneys' fees would be included in the $85,000.
Although PCA appears to have brokered the subordination agreement, it is not a party to it. The Spencers signed and sent a request for subordination to SBA. The request is loosely in the form of an offer: `If you subordinate to PCA, we will use the money to purchase irrigation equipment, PCA stock and pay closing costs.' SBA accepted the offer in the form of the subordination agreement. The mutual obligations of the agreement are that SBA will subordinate to PCA if the Spencers will execute a mortgage in favor of PCA "for an amount of not more than $85,000." PCA is not obligated to do anything, and they are not formal parties to the agreement. PCA is an intended third party beneficiary to the agreement, and as such, PCA can maintain an action to enforce the contract. Legare v. Music & Worth Construction, Inc., 486 So.2d 1359 (Fla. 1st DCA 1986). However, the trial court abused its discretion by considering parol evidence of PCA's intent regarding supposedly ambiguous language in a contract to which they are not a party. See Pittman v. Providence Washington Ins. Co., 394 So.2d 223 (Fla. 5th DCA 1981) ("A third-party beneficiary is a stranger to the contract. The parol evidence rule may be invoked by any party to such contract or their privies, but cannot be invoked by a stranger to such contract." Id. at 224 (citations omitted)).
Since evidence of PCA's intent is not relevant to the agreement between the Spencers and SBA, the ambiguity perceived by the trial court does not exist. There is no ambiguity in subordinating one's self to "an amount not to exceed $85,000." To add the words `in principal' or `plus interest, costs and attorneys' fees' is to improperly vary the terms of the contract, and there is no competent substantial evidence to support the trial court's conclusion that the interest, costs and attorneys' fees related to PCA's notes were secured by PCA's mortgage  at least to the extent the amount owed PCA exceeds $85,000. The subordination agreement provides SBA was to subordinate to no more than $85,000 in toto.
There is no question, however, that SBA subordinated itself to a future advances mortgage. As Judge Tench suggested, it would have been prudent for SBA to look at the mortgage to which it *696 was subordinating since it has a policy against subordinating to future advances mortgages and PCA is in the future advances mortgage business. Further, the subordination agreement was recorded after the PCA mortgage, and "[o]nce that mortgage was recorded [SBA] was on constructive notice of the contents of the mortgage, including the future advance clause allowing advances... ." Dunson v. Stockton, Whatley, Davin & Co., 346 So.2d 603, 606 (Fla. 1st DCA 1977). Contrary to the suggestion made by the dissent, we have not reached this result by application of waiver or estoppel arguments to SBA's position; neither have we strayed from the clear terms of the subordination agreement prepared by SBA. That agreement, authored by attorney Schimmerling, expressly subordinates SBA's position to the mortgage lien in favor of PCA "in an amount not to exceed $85,000." The instrument contains no other words of limitation. PCA has but one "mortgage lien," and this lien exists by virtue of the April 17, 1978 mortgage. SBA subordinated to an amount not to exceed $85,000, and not merely to the initial loan amount received by the Spencers from PCA.
We conclude that the January 17, 1985, note in the sum of $56,300 as well as the April 23, 1985, note to PCA in the sum of $28,618.08 are secured by the April 17, 1978, mortgage to PCA. The final judgment, dated December 7, 1990, adjudged PCA to be due, under its notes and mortgage, $137,247.02 for principal, interest, costs and attorneys' fees. SBA's mortgage, which was recorded first, is superior to PCA's mortgage except for $85,000 (of the $137,247.02). In all amounts over $85,000 the SBA mortgage has priority over the PCA mortgage.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
SHIVERS and KAHN, JJ., concur.
ZEHMER, J., concurs in part and dissents in part, with an opinion.
ZEHMER, Judge (concurring in part and dissenting in part).
While I concur that the subordination agreement is limited to a maximum total of $85,000, including principal, interest, and costs, and that the trial court erred in ruling otherwise, I respectfully dissent from the holding that the subordination agreement covers all of the future advances made by PCA to the Spencers. I disagree with the majority's conclusion that the agreement is facially unambiguous in respect to the subordination of SBA's mortgage to future advances to the Spencers and would consider the extrinsic evidence in the record to determine the intent of the parties to that agreement, i.e., the Spencers and SBA, regarding future advances. I would reverse the appealed judgment and hold that SBA is subordinated only to the amount of the original $85,000 loan that remains unpaid.
The subordination agreement was made between SBA and the Spencers, as the majority opinion correctly concludes, and they are the only parties to the agreement. The agreement contains no reference whatsoever to future advances. It does not explicitly subordinate SBA's mortgage to advances, current or future, for farm operating expenses. Indeed, for the agreement to have done so would have been contrary to SBA policy. The Spencers' request for subordination was prepared by a PCA representative and plainly stated that the purpose of the PCA loan to which SBA would subordinate was: "Purchase irrigation equipment $75,939.50; Purchase PCA stock and closing costs $9,060.50." This written request further indicates repayment of the indicated indebtedness in six annual installments of $16,325 each, beginning April 5, 1979, with final payment due April 5, 1985. The request contains no reference to funding operating expenses, either out of the proceeds of the initial $85,000 loan or through any future advances. A copy of the PCA mortgage was not submitted with the request to SBA, and SBA was not informed in any way that it was expected to subordinate to future advances for operating expenses, if any should be made by PCA. Acting on the information shown in *697 this request, SBA approved the subordination, with the notation that the primary purpose of the loan was to acquire irrigation equipment and that, "Subordination to allow Capital Improvement will not dilute SBA position as equity will be improved by amount of loan increase." There was no evidence presented from the Spencers showing a contrary intent in respect to the subordination agreement. Thus, the record establishes without dispute that, as between SBA and the Spencers, there was no intent to subordinate to any indebtedness to cover farm operating expenses, whether currently existing or to be created by future advances.
The majority opinion characterizes PCA's rights under the subordination agreement as that of a third party beneficiary, and I agree. This means that PCA's rights in respect to the subordination agreement are derivative through the Spencers and can be no greater than the Spencers' legal rights in the circumstances, unless PCA can be considered to occupy the status of a "bona fide purchaser" without knowledge of the parties' intent. Since the Spencers have no legal right to insist that the subordination agreement be extended to future advances for operating expenses, then PCA also has no legal right to insist that the advances are covered by that agreement, particularly in view of PCA's personal participation and conduct in obtaining the subordination agreement. A PCA representative prepared the subordination request to SBA (the majority opinion describes PCA's conduct as having "brokered the subordination agreement"). PCA did not furnish SBA a copy of the mortgage with the application, never notified SBA that the purpose of these loans was to fund farm operating expenses (contrary to the representations in the request), and never gave SBA notice of any future advance or any renewal of the original loan it considered to be secured by its mortgage to which SBA had subordinated. PCA is in no position to profess good faith lack of knowledge of the limited purpose of the subordination request it submitted on behalf of the Spencers and is precluded by equitable principles from contending that PCA relied on SBA's agreement to subordinate to the PCA mortgage lien in respect to future advances for operating purposes. PCA's conduct under these circumstances suggests it had misled SBA in obtaining the subordination agreement.
This is an action in equity to foreclose PCA's mortgage. Determining the priority to be given PCA's mortgage and SBA's mortgage in light of the subordination agreement is dependent upon equitable principles. In my view, to enforce the subordination agreement under the circumstances of this case so as to compel SBA to forgo its mortgage lien to the future advances secured by the PCA mortgage does not accomplish equity, but rewards PCA for grossly inequitable conduct in obtaining the subordination agreement in the first place.
Furthermore, the majority opinion does not treat the subordination agreement as having incorporated by reference all the terms and conditions of the PCA mortgage, and properly so, as the agreement does not purport to expressly incorporate such terms and conditions; the agreement merely identifies the PCA mortgage by reference to its recordation in the official records, which SBA was unable to complete when it signed the agreement because the PCA mortgage was not recorded until June 27, 1976, some eight days after the subordination agreement was executed by SBA and sent to the Spencers and PCA. Thus, the majority opinion is not based on a finding that the subordination agreement expressly includes future advances. Instead, the majority opinion considers only the language appearing on the face of the subordination agreement itself and reaches a construction of the agreement solely by implication from that language, which contains no express reference to future advances. This result is contrary to established principles governing the construction and application of subordination agreements. Subordination agreements are to be strictly construed. Ban-Co Investment Co. v. Loveless, 22 Wash. App. 122, 587 P.2d 567, 574 (1978). Because a subordination agreement alters the normal priority of the mortgage *698 liens, "priority under a subordination agreement is strictly limited by the express terms of the agreement. Gluskin v. Atlantic Savings & Loan Association, 32 Cal. App.3d 307, 322, 108 Cal. Rptr. 318, 323 (1973)." Citizens & Southern National Bank of South Carolina v. Smith, 277 S.C. 162, 284 S.E.2d 770, 771 (1981). The majority opinion violates these principles in ruling that by implication the agreement extends to future advances for operating expenses.
The majority opinion also relies on the rationale that the PCA mortgage was recorded and thus SBA was on constructive notice that the PCA mortgage lien included future advances, citing Dunson v. Stockton, Whatley, Davin & Co., 346 So.2d 603, 606 (Fla. 1st DCA 1977). The opinion indicates that the recordation of the PCA mortgage somehow provided SBA with constructive notice that the PCA mortgage included future advances and suggests that SBA would have been prudent to read the mortgage before subordinating to it. By injecting this notion, the majority apparently has held that SBA subordinated to all the terms and conditions of the PCA mortgage as a matter of law, even though the mortgage was not incorporated by reference, and reach this result by applying principles of waiver or estoppel to preclude SBA from making any contention that its agreement did not subordinate to future advances. While the opinion disavows that this is the basis of their decision, nevertheless one must reach this conclusion from the majority's citation to the Dunson case, wherein the court found that the constructive notice afforded by the recording of a mortgage allowing advances supported the finding of estoppel applied in that case. In the case now before us, no such issues of waiver or estoppel issues were pleaded or ruled on by the trial court, and such principles cannot serve as a valid legal basis for affirming the judgment under review.
For these reasons, I conclude that only the $28,618.08 sum remaining due on the original $85,000 note made in 1978 has priority over SBA's mortgage lien under the subordination agreement, a result conceded by SBA.