1745

SOUTH CAROLINA FEDERAL SAVINGS BANK, Appellant v. SAN-A-BEL CORPORATION, Hal C. Neese, Jr., Robert J. Foster, Allen L. Teague, Maria F. Teague, Chris J. Chris, William C. Latham, Fred A. Serral, George B. Sasin, S.W. Rumph, Robert E. Bryan, Graham Bell, Paul Joseph, Martin Brann, John M. Hall, R.F. Kirkpatrick, Jr., John W. Davis, Diane R. Davis, Southern Coastal Outdoor Advertising, Inc., David W. Howe, D. Scott Scarborough, William S. Holland, Equipment Leasing and Robert O. Ziglar, Defendants, of which D. Scott Scarborough, William S. Holland and Robert O. Ziglar, Respondents.

(413 S.E. (2d) 852)

Court of Appeals

*Edward T. Kelaher*, Surfside Beach, *for appellant.*

*Susan C. Pardue*, Myrtle Beach, *for respondents.*

Heard Oct. 16, 1991.

Decided Jan. 6, 1992.

BELL, Judge:

This is an action in equity to foreclose a mortgage. San-A-Bel Corporation, a real estate developer, granted the mortgage to South Carolina Federal Savings Bank to secure a construction loan for a condominium project in North Myrtle Beach. As a precondition for making the construction loan, the Bank required the Developer to "presell" a certain number of residential units in the project. D. Scott Scarborough, William S. Holland, and Robert O. Ziglar were among a number of purchasers who, prior to the loan from the Bank, executed preconstruction sales contracts with the Developer for the purchase of condominium units. Under the terms of these sales contracts, the Purchasers deposited a cash down payment with the Developer at the time the contracts were exe-

cuted. The sales contracts expressly permitted the Developer to use the deposit money in the development of the project, including acquisition. The sales contracts also obligated the Developer to refund the deposit money to the Purchasers if it did not complete the project within two years.

At the time it made the construction loan, the Bank knew the Developer had already entered these preconstruction sales contracts and had received the deposit money. Neither the sales contracts nor the Bank's note and mortgage contained any provision subordinating the rights of the Purchasers to the rights of the Bank. Instead, the Bank's mortgage obligated the Developer to pay any liabilities "which, if unpaid, would become a lien or charge upon the Mortgaged Property prior to or equal to the lien of this Mortgage."

Thereafter, the Developer acquired the property and began construction. Before the project was completed, the Developer defaulted on its obligations to the Bank. It also failed to complete the project within two years, prompting the Purchasers to demand return of their deposit money. The Developer did not return the money.

When the Bank brought this foreclosure action, the Purchasers joined as parties, asserting an equitable lien on the property superior to the Bank's mortgage lien. The master in equity found that the Purchasers were entitled to the return of their deposit money and that this liability of the Developer created an equitable lien on the property with priority over the Bank's mortgage lien. The circuit court affirmed the master's order on appeal. The Bank now appeals from the judgment of the circuit court. We affirm.

The question presented for our review is whether the Bank's security interest in a condominium project under a later construction loan agreement and mortgage takes priority over a Purchaser's equitable lien under an earlier contract, of which the Bank had notice, for the purchase and sale of a condominium unit. This is a question of first impression in South Carolina.

It is generally recognized that the purchaser under an executory contract for the purchase and sale of real property has an equitable lien on the property in the amount paid on the purchase price. See, e.g., *Elterman v.*

*Hyman,* 192 N.Y. 113, 84 N.E. 937 (1908), *reargument den.* 192 N.Y. 583, 85 N.E. 1109 (1908); *Brown v. Cleverly,* 93 Utah 54, 70 P. (2d) 881 (1937); *Gribble v. Stearman & Kaplan, Inc.,* 249 Md. 289, 239 A. (2d) 573 (1968); *Hillblom v. Ivancsits,* 32 Ill. Dec. 172, 76 Ill. App. (3d) 306, 395 N.E. (2d) 119 (1979). This equitable interest arises from the payment of the money and does not depend upon the purchaser's taking possession of the real estate. *Elterman v. Hyman, supra.* If, as in this case, the seller contracts to convey real estate to which he does not yet have title, the purchaser's lien arises when the money is paid and attaches to the property as security for the money when the seller acquires title. *Mihranian, Inc. v. Padula,* 134 N.J. Super. 557, 342 A. (2d) 523 (1975), *affirmed,* 70 N.J. 252, 359 A. (2d) 473 (1976); cf. *Fibkins v. Fibkins,*— S.C. —, 399 S.E. (2d) 158 (Ct. App. 1990) (equitable lien relates back to the time it was created by conduct of the parties). In equity, there is no distinction between the case where the seller contracts to sell realty to which he has existing title and the case where he later acquires title. *Wayne Building & Loan Co. of Wooster v. Yarborough,* 11 Ohio St. (2d) 195, 228 N. E. (2d) 841 (1967).

Ordinarily, one who takes a security interest in real property with notice of an existing third party equity in the property takes subject to the third party's interest. *See Barr v. Kinard,* 14 S.C.L. 38 (3 Strob. 73) (1848); *Smith v. McClam,* 289 S.C. 452, 346 S.E. (2d) 720 )1986). For one to have notice of an outstanding equitable interest, it is not necessary to know the identity of the third party or the extent of his interest. It is sufficient that one either knows or ought to know some third party interest exists. *See Barr v. Kinard, supra.; Maples v. Medlin,* 5 N.C. 220 (1809); *Marbury v. Ehlen,* 72 Md. 206, 19 A. 648 (1890).

In this case, when the Bank made the construction loan, it knew there were existing contracts of sale between the Developer and purchasers of the condominium units. Indeed, it required the Developer to have contracts of sale on a certain number of units before it would make the construction loan. The Bank also knew the Developer had received down payments which it was liable to refund to the purchasers if the project was not completed. Thus, the Bank had notice of the Purchasers' equitable interest in

the property. In these circumstances, the Bank took the construction loan mortgage subject to the prior equitable interests of the Purchasers.[1]

The Bank vigorously argues it should have priority under the rule that a purchase money mortgage will ordinarily be given priority over other security interests in realty arising through the mortgagor. *See Citizens & Southern National Bank of South Carolina v. Smith*, 277 S.C. 162, 284 S.E. (2d) 770 (1981). The rationale for this special priority is that the mortgagor's interest in the property is made possible by the purchase money loan, so that the mortgage should come ahead of other interests that attach merely because the mortgagor acquires the property. In this regard, however, the Bank can claim no better equity than the Purchasers, who paid the deposit money before the Bank made the construction loan. The contracts of sale expressly contemplated the Developer would use the deposit money to finance construction of the project, including acquisition costs, just as the later construction loan was to be used. Thus, the Purchasers, like the Bank, also enjoy a "purchase money" equity in the property. Since, however, the Bank's interest arose later in time and the Bank made its loan with notice of the prior interests of the Purchasers, the Purchasers' liens are senior to the Bank's.

For the reasons stated, we hold that the equitable liens of the Purchasers under earlier contracts of sale, of which the Bank had notice, take priority over the Bank's lien under its later construction loan agreement and mortgage.

Affirmed.

SHAW, J., and BRUCE LITTLEJOHN, Acting Judge, concur.

---

[1] Other courts have also upheld the priority of the purchaser's lien over a subsequent mortgage taken with notice of the contract of sale. *See Wayne Building & Loan Co., of Wooster v. Yarborough*, 11 Ohio St. (2d) 195, 228 N.E. (2d) 841 (1967); *National Indemnity Co. v. Banks*, 376 F. (2d) 533 (5th Cir. 1967); *Flickinger v. Glass*, 222 N.Y. 404, 118 N.E. 792 (1918); *Ihrke v. Continental Life Ins. & Inv. Co.*, 91 Wash. 342, 157 P. 866 (1916); *Stahl v. Roulhac*, 50 Md. App. 382, 438 A. (2d) 1366 (1982); *Stanovsky v. Group Enterprise & Construction Co.*, 714 S.W. (2d) 836 (Mo. App. 1986).