450 S.E.2d 77 (1994)
FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF CHARLESTON, Respondent,
v.
Arthur N. BAILEY, James Michael Manney, a/k/a James M. Manney, American Express Travel Related Services Company, Inc., Treeloft Villas Homeowners Association, Seabrook Island Property Owners Association, and Treeloft Villas Owners Association, Defendants,
of whom Treeloft Villas Homeowners Association is Appellant.
No. 2227.
Court of Appeals of South Carolina.
Heard April 12, 1994.
Decided September 19, 1994.
Rehearing Denied November 2, 1994.
*78 Mark S. Sharpe, Warren & Sinkler, Charleston, for appellant.
*79 David B. Wheeler and Mary Leigh Arnold, Holmes & Thomson, Charleston, for respondent.
HOWELL, Chief Judge:
Respondent, First Federal Savings and Loan Association of Charleston brought an action to foreclose a mortgage on real property owned by Arthur N. Bailey and James Michael Manney. Treeloft Villas Homeowners Association was included as a defendant because it held judgment liens against the property for past due assessments. Treeloft answered First Federal's complaint, maintaining its liens were superior to the mortgage lien. The master found First Federal held a purchase money mortgage superior to the liens of Treeloft. Treeloft appeals. We affirm.
First Federal's mortgage was recorded in the R.M.C. Office for Charleston County on April 18, 1979. Covenants of Treeloft Villas Homeowners Association, authorizing assessments for the improvement, maintenance and operation of common properties of the Association, were filed in the R.M.C. Office on August 24, 1978. Treeloft subsequently obtained a series of judgments[1] for unpaid assessments which were all recorded after the mortgage.
The master considered Treeloft's argument that its judgments obtained pursuant to the covenants should relate back to the date of the recording of the covenants, which was prior to the recording of the purchase money mortgage. The master concluded, however, that the assessments would not have arisen but for the purchase of the property, and that the lien created by First Federal's purchase money mortgage preceded the judgment liens. The master accordingly held in favor of First Federal, citing the principle that "a purchase money mortgage will ordinarily be given priority over security interests in realty arising through the mortgagor."
On appeal, Treeloft argues the master erred in holding First Federal's mortgage was prior to its assessment judgment liens because the judgment liens were obtained pursuant to the prior recorded covenants. The covenants provide:
4. MAINTENANCE ASSESSMENTS: Each owner of any lot shall by acceptance of a deed therefor, whether or not it shall be so expresses [sic] in such deed, agrees to all of the terms and provisions of these Covenants, and to pay to the Association: (i) an interim management fee in the sum of Ten ($10.00) Dollars per month; (ii) working capital for the Association; (iii) maintenance assessments; (iv) special assessments established and collected for hereunder [sic], whether maintenance assessments or special assessment, together with such interests thereon and cost of collections therefor, shall be a charge and continuing lien on the lots against which each assessment is made. (Emphasis added).
The covenants further provide "[T]hese Covenants shall run with and bind the land and shall enure to the benefit of and be enforceable by the Association...."
Covenants requiring the payment of maintenance assessments are contractual in nature and bind the parties to the covenants in the same manner as other contracts. See Seabrook Island Property Owners Ass'n v. Pelzer, 292 S.C. 343, 356 S.E.2d 411 (Ct. App.1987). Covenants requiring property owners to pay fees for improvements, maintenance or other services to a homeowners association have been held to run with the land. See Streams Sports Club, Ltd. v. Richmond, 99 Ill.2d 182, 75 Ill.Dec. 667, 457 N.E.2d 1226 (1983); 21 C.J.S. Covenants § 31 (1990). Moreover, where the language imposing such covenants is unambiguous, the covenants will be enforced according to their obvious meaning.[2]Shipyard Property Owners *80 Ass'n v. Mangiaracina, 307 S.C. 299, 414 S.E.2d 795 (Ct.App.1992).
We agree with Treeloft's argument that its contractual right to a charge and lien on the subject property did not emanate from First Federal's mortgagors, but rather the property was already burdened with the covenant at the time the mortgagors received title to it. Accordingly, First Federal, pursuant to the prior recorded covenants, and a provision in its mortgage,[3] holds its mortgage subject to Treeloft's right to impose a charge or lien against the property for unpaid assessments. See South Carolina Federal Sav. Bank v. San-A-Bel Corp., 307 S.C. 76, 413 S.E.2d 852 (Ct.App.1992) (one who takes a security interest in real property with notice of an existing third party equity in the property takes subject to the third party's interest).
First Federal argues that notwithstanding the prior recordation of the covenants, there was no debt to support the imposition of a charge or lien until Treeloft, in accordance with the covenants, actually made assessments against the property and such assessments became due and payable. A review of the covenants and principles of equity convinces us of the correctness of this argument. The covenants provide the assessments shall be a "charge and continuing lien on the lots against which each such assessment is made." The same provision provides that the assessments shall also be a personal obligation of the person(s) who was owner of such lot at the time when the "assessments fell due." Another provision of the covenants provides that the board of directors of Treeloft shall fix the assessments at least annually and such assessments shall be payable in advance by the lot owners. Additionally, the assessments were to become delinquent if not paid within 30 days after becoming due.
The question then becomes whether amounts assessed by the association which became past due 30 days after assessed constitute a lien recognizable at law which relates back to the time of the filing of the covenants or whether such lien is prospective only. We have not located any South Carolina cases which address this question. To answer this question, we must review the nature of the "charge and continuing lien" established in the covenants. In doing so, we note first that nowhere do the covenants purport to subject specific property to a lien or charge as security for payment of a present debt owed by a lot owner. In fact, at the time of the recording of the covenants, the specific property in question had neither been conveyed to the mortgagors, nor been assessed a sum for maintenance of the common property. We also note the covenants do not provide a method for enforcing the nonpayment of the assessment charge and lien. Nor do the covenants provide that the charge or lien created has priority over other liens and claims. Thus, Treeloft must resort to equity to enforce its charge and lien and secure whatever claim it has to the proceeds from the sale of the mortgaged property.
In equity, to charge property means to impose a burden, duty, obligation or lien; to create a claim against the property. Black's Law Dictionary, 5th Ed. (1983). A charge is a lien, incumbrance, or claim which is to be satisfied out of the specific thing, or proceeds thereof, to which it applies. State ex rel. Malott v. Board of County Com'rs of Cascade County, 89 Mont. 37, 296 P. 1 (1931); In re Interborough Consol. Corp., 288 F. 334, 349 (2nd Cir.1923). A lien is not property in the thing to which it attaches, but more properly constitutes a charge upon the thing. Powers v. Fidelity & Deposit Co. of Maryland, 180 S.C. 501, 186 S.E. 523 (1936). Unlike a mortgage, an "equitable lien or charge" is neither an estate or property in the thing itself, but is simply a right of a special nature over the thing, which constitutes a charge or encumbrance upon it, so that the very thing itself may be proceeded against in equity for payment of a claim or debt. Carolina Attractions, Inc. v. Courtney, 287 S.C. 140, 337 S.E.2d 244 (Ct. App.1985).
For an equitable lien to arise there must be a debt owing from one person to another, specific property to which the debt attaches, and an intent, expressed or *81 implied, that the property will serve as security for the payment of the debt. Perpetual Federal Sav. and Loan Ass'n v. Willingham, 296 S.C. 24, 370 S.E.2d 286 (Ct.App.1988). An equitable lien is a mere floating equity until a judgment or decree subjecting the property to the payment of the debt or claim is rendered. 51 Am.Jur.2d Liens § 22 (1970); 53 C.J.S. Liens § 3 (1987). Although not judicially recognized until a judgment is entered declaring its existence, an equitable lien relates back to the time it was created by the conduct of the parties. Fibkins v. Fibkins, 303 S.C. 112, 399 S.E.2d 158 (Ct. App.1990).
Assuming for the sake of this appeal the covenants sufficiently identify specific property to which an equitable lien could attach, what then is the conduct of the parties that actuates the association's charge or lien? We hold it is the failure of the lot owners to pay the assessments when due. For after all, the lien or charge created in the covenants is a lien or charge for unpaid assessments. We hold Treeloft's judgments for assessments constitute liens against the property only from the time the amounts of the respective assessments represented by the judgments were fixed and became due. See St. Paul Federal Bank For Sav. v. Wesby, 149 Ill.App.3d 1059, 103 Ill.Dec. 390, 501 N.E.2d 707 (1987); see also Harley, Condominiums In South Carolina: Possibilities and Pitfalls, 17 S.C.L.Rev. 334, 346 (1965). It is clear that the assessments giving rise to Treeloft's judgments were fixed or determined subsequent to First Federal's mortgage lien and, thus, must necessarily be subordinate to the mortgage lien.
We think this resolution of the parties claims is fair and in keeping with the spirit of the law relative to the priority of common property assessment liens vis-a-vis mortgage liens. Under § 27-31-210 of the Horizontal Property Act, "all sums assessed by the administrator... but unpaid ... shall constitute a lien on such apartment prior to all other liens except only, ... (ii) mortgage and other liens, duly recorded, encumbering the apartment." Further, the Model Real Estate Cooperative Act, § 3-115 and § 3-116 of the Uniform Condominium Act provide that unpaid assessments shall constitute a lien subordinate to mortgages duly recorded prior to the assessments becoming delinquent.
Accordingly, the order of the master is
AFFIRMED.
SHAW, J. concurs.
LITTLEJOHN, Acting Judge, dissents in separate opinion.
LITTLEJOHN, Acting Judge (Dissenting):
Initially I proposed an opinion reversing the order of the trial judge. A majority of the panel assigned to this appeal, now having taken a different view, I submit my original proposal with adaptations as my dissent.
Plaintiff-Respondent, First Federal Savings and Loan Association of Charleston (First Federal), brought this action to foreclose a real estate mortgage executed by Arthur N. Bailey and James Michael Manney (Mortgagors). Treeloft Villa's Homeowners Association was made a party Defendant to the proceeding by reason of judgments for assessments arising after the mortgage was executed and recorded. The trial court issued its order of foreclosure and held that the mortgage of First Federal was superior to the judgments for assessments due the homeowners association. The homeowners association appeals. I would reverse.

FACTS
Heretofore in 1978 Seabrook Island Company owned a tract of land and proceeded to develop it as a residential subdivision. On June 30, 1978, prior to sale of the lots, the owner executed a covenant for the benefit and protection of all of the purchasers of lots in the subdivision. Thereafter, Bailey and Manney executed a purchase money mortgage incident to purchase of a lot. Included in the mortgage was a provision as follows: "... this conveyance is subject to the provisions contained in the covenants of Treeloft Villa, Seabrook Island, and by-laws of Treeloft Villa's Homeowners Association recorded in the R.M.C. Office for Charleston County in book U 116, page 91."
*82 First Federal was well aware of the provisions of the covenant. Relevant portions of the covenant declaring the rights and responsibilities of the respective property owners are as follows:
Sea Island Company `... agrees on behalf of itself, its successors and assigns, with persons who shall hereafter purchase the lots as shown on the aforesaid plat(s) (or made subject hereto by deed or other written instrument) at Sea Island, their heirs and assigns as follows:
`Common Properties' shall refer to those areas of land, together with any improvement thereon which are deeded to the [Treeloft] Association and designated in said deed as `common properties'. All common properties are to be maintained, devoted to and intended for the common use and enjoyment of the owners of the lots shown on the plats.
PROPERTY RIGHTS IN THE COMON PROPERTIES: Subject to the provisions of these covenants and the Rules and Regulations of the Association, every owner shall have a right and easement of enjoyment in and to the common properties, and such easement shall be pertinent to and shall pass with the title of every lot.
MAINTAINED ASSESSMENTS: Each owner shall by accepting a deed therefor, whether or not it shall be so expressed in, such deed, agrees to all of the terms and provisions of these covenants, and to pay to the [Treeloft] Association; [here assessments involved in this case are enumerated].
DURATION AND AMENDMENTS: These covenants shall run with and bind the land and shall enure to the benefit of and be enforceable by the [Treeloft] Association, the Company or the owner of any lot subject hereto for a period of twenty years.

LAW/ANALYSIS
In deciding the sole issue on appeal, the Court must determine who is bound by the terms of the covenant. All persons who take, by reason of deed, are beyond question bound. In like fashion I would hold that one who takes through a mortgage is bound. I disagree with the contention of First Federal that inasmuch as the debt represented by the judgments arose after the mortgage was recorded, the mortgage lien has priority.
In holding that the mortgage of First Federal was superior to the assessment judgments, I think the trial court overlooked portions of the covenant known to First Federal. The covenant provided benefits and detriments to all lot owners. A purchaser, as well as a mortgagee, comes to have an interest in the common properties, and in turn is burdened by assessment obligations. First Federal can have no stronger position than one who claims through a deed.
Rights in common properties enhance the value of the mortgage, and in turn make the properties more valuable at foreclosure sale. By taking the mortgage with full knowledge of the covenant, First Federal agreed to be bound thereby.
The covenant required that the costs of maintaining the common properties be divided among all the property owners. I find nothing inequitable in saddling the mortgage holder with the costs incident to common properties in which it holds an interest and benefits therefrom. The costs of maintaining common properties must be assumed by either First Federal or allocated among all the other lot owners. A mortgagee can protect itself against the possibility of assuming assessments by adjusting the loan to fit the appraisal. Other owners of the common properties have no similar method of protecting themselves.
The facts here involved are not identical with the facts in Council of Co-Owners of Forest Beach Villa Horizontal Properties Regime v. Smith, et al., filed March 7, 1994 and reported in Davis' ADVANCE SHEET, and with South Carolina Federal Savings Bank v. San-A-Bel Corp., 307 S.C. 76, 413 S.E.2d 852 (Ct.App.1992), but a ruling of reversal is consistent with the spirit of both of these cases.
For reasons herein stated, I would reverse the order of the trial court.
NOTES
[1] The judgments were obtained by Treeloft on August 9, 1986, August 30, 1989, December 28, 1990 and June 9, 1992.
[2] Treeloft cites authorities for the proposition that pre-existing liens may be validly created to secure future debts and obligations. The authorities cited, for the most part, deal with the validity of such liens. The validity of the assessment liens is not at issue here. No one contends they are unconstitutional or violate settled principles of property law.
[3] The mortgage states it is taken subject to the provisions of the Covenants.