In re 85–02 QUEENS BOULEVARD ASSOCIATES, Debtor.

85–2 QUEENS BOULEVARD ASSOCIATES, Plaintiff,

v.

Alan K.Y. KONG, Liza Lai Guan Kong, So Wai Cheung and Chu Chung Wong Cheung, Defendants.

Bankruptcy No. 196–18487–353.
Adversary No. 197–1096–353.

United States Bankruptcy Court, E.D. New York.

Aug. 29, 1997.

Jaspreet Mayall, Certilman, Balin, Adler & Hyman, L.L.P., East Meadow, NY, for Debtor/Plaintiff.

Louis A. Novellino, Law Offices of Stephen K. Seung, New York City, for Creditors/Defendants.

### DECISION ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

JEROME FELLER, Bankruptcy Judge.

Before the court are cross-motions for partial summary judgment in the above-captioned adversary proceeding. This adversary proceeding was filed by 85–02 Queens Boulevard Associates ("Debtor") against four judgment creditors, Alan K.Y. Kong, Liza Lai Guan Kong, So Wai Cheung and Chu Chung Wong Cheung (the "Kongs"). The Kongs obtained a prepetition New York state court judgment in the amount of $305,905.49 ("State Court Judgment"), which was the result of a successfully prosecuted lawsuit based on the Debtor's breach of a contract with the Kongs for the sale of certain real property ("State Court Action"). The State Court Judgment was docketed by the Queens

County Clerk and, in accordance with N.Y. Civ. Prac. L. & R. 5203, automatically became a lien on all the Debtor's real property in Queens County.

The Debtor is a limited partnership which owns twelve (12) parcels of real property on Queens Boulevard and Grand Avenue in Queens County. The Debtor contends that the terms of the State Court Judgment required that its effect as a lien be limited to the parcel of real property that was the subject of the contract whose breach gave rise to the State Court Action. The Debtor commenced this adversary proceeding seeking, in its fifth cause of action, a declaratory judgment to that effect. The Kongs filed an answer which denied the Debtor's contentions and counterclaimed for a declaration affirming their understanding of the State Court Judgment. According to the Kongs, the State Court Judgment provided for a monetary award which gave rise to a judgment lien for the amount of the award on all the Debtor's real property in Queens County, and a vendee's lien on the specific property that was the subject of the underlying State Court Action ("Counterclaim").

The Kongs now move for summary judgment on its Counterclaim and dismissal of the Debtor's fifth cause of action ("Motion"). Conceding the absence of factual issues, the Debtor cross-moved for summary judgment on its fifth cause of action and dismissal of the Kong's Counterclaim ("Cross–Motion"). Both motions are made pursuant to Fed. R.Civ.P. 56(c), which is applicable to adversary proceedings through Fed. R. Bankr.P. 7056.

Upon consideration of the undisputed facts and applicable legal principles, we are convinced that the State Court Judgment is properly read in the manner asserted by the Kongs. The State Court Judgment constitutes a lien on all the Debtor's real property in Queens County, and a vendee's lien on the specific real property that was the subject of the contract between the Debtor and the Kongs. Accordingly, the Kong's Motion is granted and the Debtor's Cross–Motion is denied.

**I.**

The seed from which this controversy germinates is a contract between the Debtor and the Kongs, entered into in December of 1987 ("Contract"), pursuant to which the Kongs agreed to purchase from the Debtor a parcel of real property known as 85–06 Queens Boulevard, Elmhurst, New York ("85–06 Queens Blvd." or "Subject Property"). The Contract provided that the Debtor would erect a building on the Subject Property in accordance with certain specifications mutually agreed upon. The purchase price was $818,000.00, of which $204,500.00 was paid down by the Kongs when the Contract was signed, with the remaining portion due at closing. Paragraph 36 of the rider to the Contract stated that "[a]ll sums paid on account of this agreement, and the reasonable expense of the examination of the title to said premises are hereby made liens hereon, but such liens shall not continue after default by the purchasers...." *See Contract*, which is annexed to the Kongs' Motion as Ex. F.

The Debtor breached the Contract. Prior to closing, the Kongs discovered that the square footage of the building erected in accordance with the Contract was substantially less then agreed upon. Accordingly, the Kongs rescinded the Contract and commenced the State Court Action in the New York State Supreme Court, Queens County, seeking return of their down payment, plus interest and expenses.

The State Court Action was successfully prosecuted by the Kongs who, after a lengthy trial, received a favorable decision from the presiding judicial hearing officer. The essence of the decision, dated September 19, 1995, may be gleaned from the following portion, which reads as follows:

The crux of this case reduced to its simplest terms is that the [Debtor was] unable to deliver property as [it] agreed to do pursuant to the terms of the [C]ontract involved herein. The [Debtor] attempted to deliver to the [Kongs] property of a size different than that which they had agreed to deliver under the terms of the [C]ontract and the [Kongs] in no way consented to such an alteration of the [C]ontract. Therefore, I find that the [Kongs] are enti-

tled to recover from the [Debtor] the sum of $204,500.00 and are entitled to have a lien impressed upon the property involved in the [C]ontract herein for the aforesaid sum of $204,500.00 and that the [Kongs] are entitled to any relief to which the law provides.

*See Memorandum Decision of Judicial Hearing Officer ("JHO") Allen Beldock ("Memorandum Decision")*, which is annexed to the Kongs' Motion as Exhibit C, at 6. The Debtor's seven affirmative defenses and two counterclaims were rejected, and the entire relief sought by the Kongs was granted. *Id.*

As the prevailing party, the Kongs drafted and settled the State Court Judgment, which was intended to reflect the relief granted in the decision. The State Court Judgment was signed by JHO Beldock on November 17, 1995, and contains two ordering paragraphs. These two paragraphs, the meaning of which is a matter of hot dispute between the parties, read as follows:

> ORDERED, ADJUDGED and DECREED, that the [Kongs] ... recover of [the Debtor] ... the sum of Two Hundred Four Thousand and Five Hundred ($204,-500.00) Dollars, plus interest thereon from June 28, 1990 in the sum of $100,395.49, together with costs and disbursements in the sum of $1010.00, making a total of $305,905.49, and that [the Kongs] have execution therefore, and is (sic) further,

> ORDERED, ADJUDGED and DECREED, that the Clerk of the County of Queens is hereby directed to record a lien on the premises commonly known as 85–06 Queens Boulevard, Elmhurst, New York, ... in favor of [the Kongs] in the sum of $305,905.49 immediately upon the filing of an attorney's certified copy of this judgment upon said Clerk.

*See State Court Judgment,* which is annexed to the Kong's Motion as Exhibit D.

The State Court Judgment was immediately docketed by the clerk of the New York State Supreme Court, Queens County, in ac-cordance with N.Y. Civ. Prac. L. & R. 5018(a).[1] Pursuant to N.Y. Civ. Prac. L. & R. 5203(a), once docketed, the judgment automatically became a lien on all the Debtor's real property located in Queens County.

The Debtor filed a Chapter 11 petition on August 30, 1996. The Bank of East Asia ("Bank") is a secured creditor of the Debtor owning a blanket mortgage on all twelve parcels of the Debtor's real property, including 85–06 Queens Blvd. ("Mortgage"). As of the petition date, the amount due and owing on the Mortgage, as indicated on schedule D of the Debtor's petition, is $4,300.000.00. The Kongs are the only other secured creditors listed on Debtor's schedule D. Despite being listed by the Debtor on schedule D of its petition (Creditors Holding Secured Claims), the Kongs' claim, scheduled at $306,000.00, is denominated by the Debtor as totally unsecured. The Kongs maintain that their claim is a secured one in the amount of $330,500.00, inclusive of further accruals of interest on the State Court Judgment, and have filed a proof of claim to that effect.

The Debtor commenced this adversary proceeding on January 22, 1997. In its fifth cause of action, the Debtor alleges that the sole relief granted to the Kongs by the State Court Judgment was a monetary award of $305,905.49 (the amount of the Kongs' down payment, plus interest), enforceable only by a lien against 85–06 Queens Blvd. The Debtor seeks a judgment declaring that to be the case. If the Debtor is correct, the Kongs will only be able to look to 85–06 Queens Blvd. for satisfaction of the State Court Judgment. In the context of this chapter 11 case, such a limitation may be quite harmful to the Kongs. 85–06 Queens Blvd. is valued by the Debtor in its schedule A at $330,-000.00. The State Court Judgment has not been satisfied and with interest accruals is growing daily. If the State Court Judgment is limited in effect as contended by the Debtor, it likely cannot be fully satisfied and, possibly, not satisfied at all in light of the Bank's Mortgage.

---

1. The entering of a judgment obtained in an action pending in any New York State Supreme Court, by the court clerk, results automatically in the docketing of that judgment with the county clerk of the county where the particular court is located. *See* David D. Siegel, New York Practice § 418 at 638 (2d ed.1991).

The Kongs' answer rejects the Debtor's reading of the State Court Judgment and by their Counterclaim seek a judgment endorsing their understanding of that document. According to the Kongs, the State Court Judgment granted two separate and distinct forms of relief: a monetary award which was provided for in the first ordering paragraph, and a lien for the amount of said award which was provided for in the second. Once docketed, the monetary judgment became a lien on all the Debtor's real property in Queens County, including 85–06 Queens Blvd. According to the Kongs, the second ordering paragraph, which specifically awarded them a lien for the amount of the monetary award on 85–06 Queens Blvd., does not limit the lien effect of the first ordering paragraph to that property, nor is it redundant. Instead, it grants a second additional specie of relief, a vendee's lien on 85–06 Queens Blvd. and, as such, may have a priority over the Bank's Mortgage. Debtor's reply to the Kongs' Counterclaim denies the existence of such a vendee's lien.

## II.

In resolving the motions for partial summary judgment, our role is not to "try issues of fact, but [to] determine whether there are issue of fact to be tried." *Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984) (quoting *Empire Elecs. Co. v. United States*, 311 F.2d 175, 179 (2d Cir. 1962)). Fed.R.Civ.P. 56(c) provides in pertinent part that "the judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." The present controversy involves solely an interpretation of the State Court Judgment which is a question of law. *See* 46 Am.Jur.2d *Judgments* § 93 (1994). Where the language of a judgment "is clear and unambiguous, the reviewing court must adopt, and give effect to, the plain meaning of the judgment; however, if the judgment is ambiguous, the reviewing court must construe its meaning, and in doing so may resort to the record upon which the judgment was based." *Id.* Either way, the court is faced with no triable issues of fact.

It would appear that the State Court Judgment, particularly its second ordering paragraph, is somewhat ambiguous. "As a general rule, judgments are to be construed like other written instruments." *Id.* § 94. Ambiguous language, whether in a judgment or otherwise, is that which is "capable of more than one meaning when viewed objectively by a reasonably intelligent person. . . ." *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 149 (2d Cir.1993) (quoting *Walk–In Medical Ctrs., Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir.1987)). *See also* 46 Am.Jur.2d *Judgments* § 97 ("A judgment will be considered ambiguous if reasonable persons differ as to its effect and meaning.").

This court sees three possible interpretations of the State Court Judgment. Pursuant to N.Y. Civ. Prac. L. & R. 5203(a), as a result of the monetary award provided for in its first ordering paragraph, the State Court Judgment, once docketed, automatically established a lien on all the Debtor's real property in Queens County, including the Subject Property. Thus, the State Court Judgment's second ordering paragraph, which directed the recording of a lien on the Subject Property in the amount of the monetary award contained in the first ordering paragraph, may be merely surplusage. However, this interpretation will be avoided, if possible. *See Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988) (holding that an interpretation which "would have the effect of rendering at least one clause superfluous or meaningless . . . is not preferred . . . ."); *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985) ("[A]n interpretation that gives a reasonable and effective meaning to all the terms . . . is generally preferred to one that leaves a part unreasonable or of no effect." (citation omitted)).

The second possible interpretation of the State Court Judgment is propounded by the Debtor. The Judicial Hearing Officer may have intended by the second ordering paragraph to limit the enforceability of the preceding monetary award to a lien on 85–06 Queens Blvd., thereby superseding Civ. Prac. L. & R. 5203(a). However, he may have also

intended, as the Kongs assert, to grant a separate and distinct category of relief—a vendee's lien on the Subject Property.

■ The vendee's lien is an "invention of equity" created by courts "for the purpose of doing justice...." *Elterman v. Hyman*, 192 N.Y. 113, 121, 84 N.E. 937 (1908). The existence of a vendee's lien is grounded in the well established principle of real property law that upon the execution of a valid contract for the sale of real property, the purchaser becomes "equitable owner" of, and obtains "equitable title" to the subject property. *Bean v. Walker*, 95 A.D.2d 70, 464 N.Y.S.2d 895, 896–97 (4th Dep't 1983). While the seller retains legal ownership of the property prior to transfer of title thereto, the existence of a contract of sale and partial payment of the purchase price creates in the purchaser "an interest in the land itself to the extent of the payments made thereon." *Elterman v. Hyman*, 192 N.Y. at 125, 84 N.E. 937. Thus, where the sale contract fails, absent fault of the purchaser, courts in New York will enforce in favor of the purchaser (vendee) a lien on the subject property to the extent of monies paid so that the purchaser "may assert his rights in a court of equity to get out of the land what he paid on it." *Id.; see also Crossland Sav. v. Foxwood & Southern Co.*, 202 A.D.2d 544, 609 N.Y.S.2d 282, 283 (2d Dep't 1994); *Heritage Art Galleries, Ltd. v. Raia*, 173 A.D.2d 441, 570 N.Y.S.2d 67, 68 (2d Dep't 1991). *Accord National Indem. Co. v. Banks*, 376 F.2d 533, 534–35 (5th Cir.1967) (Mississippi); *In re Mayfair Constr. Co.*, 170 F.Supp. 657, 658 (D.N.J.1959) (New Jersey); *Security Fed. Sav. & Loan v. Commercial Inv., Ltd. (In re Commercial Inv., Ltd.)*, 92 B.R. 488, 492–93 (Bankr.D.N.M.1988) (New Mexico); *Howard v. Linnhaven Orchard Co.*, 228 F. 523, 526 (D.Or.1913) (Oregon); *South Carolina Fed. Sav. Bank v. San–A–Bel Corp.*, 307 S.C. 76, 413 S.E.2d 852, 854 (App.1992) (South Carolina).

■ A vendee's lien differs from a judgment lien in important respects. A vendee's lien is an equitable lien which arises and attaches to specific real property when a contract for sale of said property is executed, and the purchaser makes partial payment of the purchase price. *See Elterman v. Hyman*, 192 N.Y. at 124, 84 N.E. 937 ("The payment of the deposit ... creates a lien for the amount paid ... on the subject matter of the contract."); *Bean v. Walker*, 464 N.Y.S.2d at 897 ("[U]pon the execution of a contract an interest in real property comes into existence by operation of law...."); *see also South Carolina Fed. Sav. Bank v. San–A–Bel Corp.*, 413 S.E.2d at 854 (citing *Elterman v. Hyman* and holding that a vendee's lien "arises from the payment of money ...", and relates back to the time it was created). A judgment lien is a statutory lien which comes into existence only after a judgment is obtained in a court of law and entered by the clerk. It operates not as a specific lien upon any particular real property, but as a general lien on all the judgment debtor's real property in a particular county. *See Ledsal Realty Corp. v. Demkin*, 141 N.Y.S.2d 686, 690 (Sup. Ct.1955).

Thus, the Kongs assert that the Debtor's breach of the Contract resulted in two liens: a vendee's lien on the Subject Property which arose in December of 1987 upon execution of the Contract and partial payment by the Kongs of the purchase price; and a judgment lien on all the Debtor's real property in Queens County, including the Subject Property, which arose in November of 1995 when the State Court Judgment was docketed. We are informed that the Bank's mortgage was granted subsequent to the execution of the Contract, but prior to the State Court Judgment. *See Memorandum of Law in Support of Debtor's Cross–Motion* at 7.

Having concluded that, *prima facie*, the State Court Judgment may be read in the manner asserted by both the Debtor and the Kongs, we will construe it in accordance with the record of the underlying State Court Action, including: the pleadings; the subject matter of the lawsuit; the reasons for the judgment; and the findings of the state court. *See* 46 Am.Jur.2d *Judgments* § 97. Upon such review, we find the State Court Judgment is not limited to enforcement as a lien only against the Subject Property, as asserted by the Debtor. The State Court Judgment was designed to grant the Kongs a monetary award, enforceable as a lien on all

the Debtor's real property in accordance with state law, **and** a vendee's lien on 85–06 Queens Blvd.

This conclusion is compelled by the nature and totality of the Kongs' victory in the State Court Action. The essential relief sought and obtained in the State Court Action by the Kongs was return of their down payment. The Kongs executed the Contract in 1987 and paid the Debtor $204,500.00 towards the purchase price of 85–06 Queens Blvd. The Contract never closed due to the Debtor's breach, yet the down payment was never returned to the Kongs. Instead, for ten years the Debtor has retained the down payment **and** the Subject Property. The vendee's lien evolved to protect against this very sort of injustice and inequity. *See Elterman v. Hyman*, 192 N.Y. at 118–124, 84 N.E. 937 (for a detailed historical analysis of the origin and development of the vendee's lien).

In fact, by the Memorandum Decision, JHO Beldock did not only determine that the Debtor breached the Contract and that the Kongs were entitled to return of their down payment. He also rejected each and every one of the Debtor's seven affirmative defenses and two counterclaims. It hardly seems likely that JHO Beldock intended in the State Court Judgment to somehow limit the Kongs' ability to recover their down payment by constricting their ability to enforce the judgment. To the contrary, JHO Beldock found that the Kongs were "entitled to any relief to which the law provides." *See Memorandum Decision* at 6.

▆▆ The Debtor makes a number of arguments in support of its restrictive interpretation of the State Court Judgment. None have merit. The Debtor contends that faced with competing interpretations, this court should construe the State Court Judgment against the draftsmen—the Kongs. However, "[t]he determinative factor [in construing a judgment] is the intention of the court, not that of the parties...." 46 Am. Jur.2d *Judgments* § 94. Accordingly:

> [w]hile the rule of interpretation providing that the document should be interpreted against the party that drafted it is appropriate in cases involving ambiguous contractual terms, it is inapplicable when the

> ... court seeks the meaning of a judicial decree, which is a pronouncement of the court and not of the parties.

*Id.* The State Court Judgment must be read in light of the underlying Memorandum Decision. The determination of JHO Beldock, as memorialized in the Memorandum Decision, to grant the Kongs full, complete and broad redress, not circumscribed relief, is clear.

The Debtor also argues that a vendee's lien on 85–06 Queens Boulevard could not have arisen in the context of the State Court Action because the Kongs did not name the Bank as a party to that lawsuit. Taking up the cudgels of the Bank, the Debtor expresses concern that a vendee's lien affects the priority of the Bank's Mortgage where, as here, the Mortgage was obtained subsequent to execution of the Contract. According to the Debtor, "[t]he granting of a vendee's lien without the Bank ... being named as a party to such action would amount to a due process violation, as the [B]ank would not have been afforded its rights to contest whether its subsequent lien is entitled to a priority over the lien being sought by the [Kongs]." *See Memorandum of Law in Support of Debtor's Cross–Motion* at 7.

The Debtor offers no legal support for the notion that the Bank's absence as a party to the State Court Action precluded the state court from recognizing the Kongs' vendee's lien on 85–06 Queens Blvd. The absence of any case law or statutory authority supporting this hypothesis is not surprising. The argument evinces a fundamental misunderstanding of real property law and New York civil practice.

The state court acted consistently with New York law in giving cognizance to the existence of a vendee's lien to redress the Kongs for the Debtor's breach of the Contract, while making no determination as to the priority of that lien relative to the Bank's Mortgage on the Subject Property. The State Court Judgment and the resulting liens could not be enforced (i.e., converted to money), without compliance with applicable provisions of state law specifically designed to protect, in the post-judgment/enforcement phases of the civil litigation, the interest of

the Bank and other alleged lienholders of the Debtor's real property.

To enforce either the judgment lien or the vendee's lien in satisfaction of the State Court Judgment, the Kongs would first be required to issue an "execution" directing the Queens County sheriff to satisfy the judgment out of the Debtor's real property located in Queens County or, in the case of the vendee's lien, the Subject Property.[2] N.Y. Civ. Prac. L. & R. 5230. The sheriff could then sell the property pursuant to N.Y. Civ. Prac. L. & R. 5236(a), but only after compliance with the notice of sale requirement contained in N.Y. Civ. Prac. L. & R. 5236(c). The sheriff must serve notice of the sale on "every judgment creditor whose judgment was a lien on all the real property to be sold" and "every person who had of record any interest in or a lien on such property." *See* N.Y. Civ. Prac. L. & R. 5236(c) (McKinney 1978).

The vendee's lien validated by the State Court Judgment may be superior to the Bank's subsequent Mortgage, provided the Mortgage was obtained with actual or constructive notice of the vendee's lien. *See Bodner v, Brickner*, 29 A.D.2d 441, 288 N.Y.S.2d 342, 347 (1st Dep't 1968); *Ardisco, Ltd. v. Taconic Holding Corp.*, 10 A.D.2d 973, 201 N.Y.S.2d 992, 993 (2d Dep't 1960). If the Bank's Mortgage is properly recorded, the Bank would be notified of the sale and could then commence a special proceeding under to N.Y. Civ. Prac. L. & R. 5239, to adjudicate the priority of its Mortgage relative to the vendee's lien. It is in the context of such a special proceeding, and not the underlying State Court Action, that the Bank's right of "due process" would be protected had the Debtor not filed for bankruptcy protection. *See Bank Leumi Trust Co. v. Liggett*, 115 A.D.2d 378, 496 N.Y.S.2d 14, 16 (1st Dep't 1985) ("The purpose of ... CPLR 5239[is] to provide a procedural device by which lienors, other than judgment creditors, could stake their claims against the subject property, and have the validity and priority

of all liens, including their own, judicially determined prior to a judicial sale.").

The Bank was a stranger to the Contract entered into between the Kongs and the Debtor. Obviously, the Bank was not a necessary party to the State Court Action for breach of that Contract and it is wrong to suggest that the state court was required to consider the Bank's interests in the context of litigation to which the Bank was an outsider.

Likewise, the Bank is an outsider to this adversary proceeding. Accordingly, this court cannot adjudicate issues of priority of the Kongs' vendee's lien relative to the Bank's Mortgage in the context of the Kongs' Counterclaim.

### III.

Based on all of the foregoing, we find the docketed State Court Judgment provides the Kongs with a lien on all the Debtor's real property in Queens County and a vendee's lien on 85–06 Queens Boulevard. Accordingly, the Kongs' Motion for summary judgment on its Counterclaim and dismissal of the Debtor's fifth cause of action is granted to that extent. We are unable to rule on that portion of the Kongs' Counterclaim seeking a determination that their vendee's lien has priority over the Bank's Mortgage. The Debtor's efforts to limit the scope and effect of its litigation defeat at the hands of the Kongs and resultant State Court Judgment are rejected. The Debtor's Cross–Motion is denied in its entirety.

### SETTLE ORDER

---

**2.** It appears that under New York law either the Kongs or the sheriff could select the property to be sold pursuant to an execution. *See* David D.

Siegel, Supplementary Practice Commentary to N.Y. Civ. Prac. L. & R. 5230 at C5230:1 (McKinney 1995).